COOLEY LLP
MICHAEL G. RHODES (116127) (rhodesmg@cooley.com)
KYLE C. WONG (224021) (kwong@cooley.com)
AARTI G. REDDY (274889) (areddy@cooley.com)
101 California Street, 5th Floor
San Francisco, CA 94111-5800
Telephone:    (415) 693-2000
Facsimile:     (415) 693-2222

CHARLES A. WOOD (310702) (cwood@cooley.com)
1299 Pennsylvania Ave., NW, Suite 700
Washington, DC 20004
Telephone:    (202) 842-7800
Facsimile:     (202) 842-7899

Attorneys for Defendant
Clicktale, Inc.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| AMBER YALE, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>CLICKTALE, INC.,<br><br>Defendant. | Case No. 3:20-cv-07575-LB<br><br>**DEFENDANT CLICKTALE, INC.'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED CLASS ACTION COMPLAINT**<br><br>Hearing Date:  May 13, 2021<br>Hearing Time:  9:30 a.m.<br>Judge:               Honorable Laurel Beeler |

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEFENDANT CLICKTALE, INC.'S REPLY
ISO MTD PLAINTIFF'S FAC
Case No. 3:20-cv-07575-LB

# TABLE OF CONTENTS

Page

I. Introduction. ..................................................................................................................... 1
II. Argument. ......................................................................................................................... 2
    A. All of Plaintiff's CIPA Claims Fail. ..................................................................... 2
        1. Clicktale Cannot Have Violated Section 631 Because It Was a Party to Any Communication. ...................................................... 2
        2. The Information that Clicktale Allegedly Intercepted Is Not Content. .......................................................................................... 7
        3. Plaintiff Fails to Plead Statutory and Constitutional Standing in Support of Her Section 635 Claims. ................................................ 8
        4. Plaintiff Fails to Plead that Clicktale's Technology Is a Device "Primarily or Exclusively Designed or Intended for Eavesdropping." .................................................................................. 10
    B. Plaintiff Fails to Allege an Invasion of Privacy. .................................................. 11
        1. Plaintiff Does Not Have a Legally Protected Privacy Interest. ................. 11
        2. Plaintiff Does Not Have a Reasonable Expectation of Privacy. ............... 13
        3. Clicktale's Conduct Is Not Highly Offensive to a Reasonable Person. ...................................................................................................... 14
III. **Conclusion.** .................................................................................................................... 15

-i-

DEFENDANT CLICKTALE, INC.'S REPLY
ISO MTD PLAINTIFF'S FAC
Case No. 3:20-cv-07575-LB

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alch v. Sup. Ct.*,
  165 Cal. App. 4th 1412 (2008) .................................................................................................. 12

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) .................................................................................................................. 10

*Campbell v. Facebook, Inc.*,
  951 F.3d 1106 (9th Cir. 2020) .................................................................................................... 9

*In re Carrier IQ, Inc.*,
  78 F. Supp. 3d 1051 (N.D. Cal. 2015) ...................................................................................... 10

*In re Facebook, Inc. Internet Tracking Litig.*,
  956 F.3d 589 (9th Cir. 2020) ........................................................................................ 5, 6, 9, 13

*Folgelstrom v. Lamps Plus, Inc.*,
  195 Cal. App. 4th 986 (2011) .................................................................................................... 15

*Goodman v. HTC Am., Inc.*,
  2012 WL 2412070 (W.D. Wash. June 26, 2012) ...................................................................... 14

*Graham v. Noom*,
  Order Granting Defs.' Mots. to Dismiss, No. 20-6903 (N.D. Cal. Apr. 8, 2021) ......... 1, 2, 3, 4

*In re Google Assistant Priv. Litig.*,
  457 F. Supp. 3d 797 (N.D. Cal. 2020) ........................................................................... 7, 12, 13

*Gruber v. Yelp Inc.*,
  55 Cal. App. 5th 591 (2020) ........................................................................................................ 6

*Hernandez v. Hillsides, Inc.*,
  47 Cal. 4th 272 (2009) .............................................................................................................. 11

*Hill v. Nat'l Collegiate Athletic Ass'n*,
  7 Cal. 4th 1 (1994) .................................................................................................................... 14

*Javier v. Assurance IQ, LLC*,
  2021 WL 940319 (N.D. Cal. Mar. 9, 2021) ................................................................................ 3

*In re Lenovo Adware Litig.*,
  2016 WL 6277245 (N.D. Cal. Oct. 27, 2016) ............................................................................. 9

*Lopez v. Apple, Inc.*,
  --- F. Supp. 3d ----, 2021 WL 823122 (N.D. Cal. Feb. 10, 2021) .............................................. 4

*Membrila v. Receivables Performance Mgmt., LLC*,
  2020 WL 1407274 (S.D. Cal. Apr. 6, 2010) ............................................................................... 4

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

-ii-

DEFENDANT CLICKTALE, INC.'S REPLY
ISO MTD PLAINTIFF'S FAC
CASE NO. 3:20-CV-07575-LB

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Moreno v. S.F. Bay Area Rapid Transit Dist.*,
  2017 WL 6387764 (N.D. Cal. Dec. 14, 2017) .................................................................... 11

*NovelPoster v. Javitch Canfield Grp.*,
  140 F. Supp. 3d 938 (N.D. Cal. 2014) ................................................................................ 7

*Opperman. Opperman v. Path, Inc.*,
  87 F. Supp. 3d 1018 (N.D. Cal. 2014) .............................................................................. 15

*Opperman v. Path, Inc.*,
  205 F. Supp. 3d 1064 (N.D. Cal. 2016) ............................................................................ 15

*People v. Avery*,
  27 Cal. 4th 49 (2002) ........................................................................................................ 7

*People v. Windham*,
  145 Cal. App. 4th 881 (2006) ............................................................................................ 6

*Powell v. Union Pac. R.R. Co.*,
  864 F. Supp. 2d 949 (E.D. Cal. 2012) ............................................................................... 4

*Revitch v. New Moosejaw, LLC*,
  2019 WL 5485330 (N.D. Cal. Oct. 23, 2019) ............................................................ *passim*

*Ribas v. Clark*,
  38 Cal. 3d 355 (1985) .................................................................................................... 5, 6

*Riley v. California*,
  573 U.S. 373 (2014) ........................................................................................................ 12

*Rogers v. Ulrich*,
  52 Cal. App. 3d 894 (1975) ..................................................................................... 3, 4, 5, 6

*Romero v. Securus Techs., Inc.*,
  216 F. Supp. 3d 1078 (S.D. Cal. 2016) ........................................................................... 10

*S.D. v. Hytto Ltd.*,
  2019 WL 8333519 (N.D. Cal. May 15, 2009) ................................................................ 3, 4

*Spokeo, Inc. v. Robins*,
  136 S. Ct. 1540 (2016) ................................................................................................... 8, 9

*United States v. Eady*,
  648 F. App'x 188 (3d Cir. 2016) ....................................................................................... 4

*Warden v. Kahn*,
  99 Cal. App. 3d 805 (1979) ............................................................................................ 6, 7

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

iii

DEFENDANT CLICKTALE, INC.'S REPLY
ISO MTD PLAINTIFF'S FAC
Case No. 3:20-cv-07575-LB

# TABLE OF AUTHORITIES
### (continued)

**Page(s)**

*In re Yahoo Mail Litig.*,
　7 F. Supp. 3d 1016 (N.D. Cal. 2014) .................................................................................. 11

*In re Zynga Priv. Litig.*,
　750 F.3d 1098 (9th Cir. 2014) ............................................................................................. 8

**Statutes**

1988 Cal. Legis. Serv. ch. 111 § 4 ................................................................................................ 3

Cal. Penal Code
　§ 631 ............................................................................................................................ *passim*
　§ 632 ................................................................................................................................ 6, 9
　§ 635 ............................................................................................................................ *passim*
　§ 636 ................................................................................................................................... 10
　§ 637.2 .................................................................................................................................. 1
　§ 637.2(a) ............................................................................................................................. 8

**Other Authorities**

Marin K. Levy, *Judging the Flood of Litigation*, 80 U.Chi. L. Rev. 1007 (2013) ........................ 2

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

iv

DEFENDANT CLICKTALE, INC.'S REPLY
ISO MTD PLAINTIFF'S FAC
Case No. 3:20-cv-07575-LB

## I. INTRODUCTION.

Plaintiff's Opposition ("Opposition" or "Opp.") confirms that a website service provider like Clicktale, Inc. ("Clicktale") cannot and should not be held liable for simply providing a software tool used by websites to log user activity to help website operators improve the website experience. At bottom, users send this information to websites like Gap and these websites have the right to collect it, with or without the help of third-party tools. Plaintiff does not dispute that Clicktale collected data solely for Gap, an intended recipient of any of the claimed CIPA user communications. Nor does she allege that any of her logged actions were ever sold, disseminated to a third party, or used for advertising. (ECF No. 1, ¶ 15.) Also absent is any claim that Clicktale caused her any injury whatsoever. These facts do not support a claim for relief, and Plaintiff's Opposition offers no contrary arguments or authorities. Indeed, Plaintiff's claims are no different from those in *Graham v. Yale*, recently decided by this Court, and should likewise be dismissed. Order Granting Defs.' Mots. to Dismiss, No. 20-6903 (N.D. Cal. Apr. 8, 2021), ECF No. 51.

Plaintiff's California Invasion of Privacy Act ("CIPA") claims ignore the required Ninth Circuit "technical context" of her own factual allegations, which establish that Clicktale is exempt from liability as a party to any communications. Plaintiff instead seeks to distract the Court by suggesting Clicktale should be held liable for aiding and abetting under Section 631 (a claim not pled in the First Amended Class Action Complaint ("FAC")); and wrongly contending her pleadings trigger CIPA's two-party consent requirements. Plaintiff then asks this Court to recognize a private right of action under Section 635, when Article III and Section 637.2 do not allow one.

Plaintiff also fails to show how Clicktale's code is a device "primarily or exclusively designed or intended for eavesdropping," or how Clicktale's manufacture, possession, or sale of this code caused her injury. Likewise, Plaintiff's constitutional invasion of privacy claim fails for lack of a reasonable expectation that the data she voluntarily and intentionally sent to Gap should remain hidden from Gap's service providers, that the information was "disseminated or misused," or that the alleged use of the data would be highly offensive to a reasonable person. Plaintiff's failure to plead a violation of Section 631 also negates each of her other claims. *Id.*

Finally, and contrary to Plaintiff's claims, opening the litigation floodgates of a century-old

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1

DEFENDANT CLICKTALE, INC.'S REPLY
ISO MTD PLAINTIFF'S FAC
Case No. 3:20-cv-07575-LB

law *is* relevant. Not only because it implicates judicial efficiency, but more importantly because it betrays an unreasonable and a historic interpretation of a longstanding statute.[1] The recent frenzy to litigate similar issues presented here in dozens of cases shows that the thinly-reasoned *Revitch* decision on which Plaintiff premises virtually all of her arguments is an overbroad interpretation of CIPA. This Court should again decline Plaintiff's invitation to further expand CIPA's scope and dismiss her claims. To do otherwise will criminalize not just service providers like Clicktale, but also the plethora of other tools that form the backbone of the Internet.

## II. ARGUMENT.

### A. All of Plaintiff's CIPA Claims Fail.

#### 1. Clicktale Cannot Have Violated Section 631 Because It Was a Party to Any Communication.

Clicktale's Motion demonstrated that it cannot be held liable under Section 631 because as a service provider, it fits within the statute's well-established party exception. (Mot. at 6-9.) Plaintiff acknowledges the party exception, yet attempts to avoid application of that exception here. Her arguments are all meritless and her claim should be dismissed. *See Graham*, No. 20-6903 (N.D. Cal. Apr. 8, 2021), ECF No. 51 at *7-9.

***First***, Plaintiff asserts that Clicktale's argument that it is a party to the communication "contradicts the pleadings." (Opp. 3.) Not so. As Clicktale explained in its Motion, the FAC concedes that Gap was a party to the underlying communication and that Clicktale simply acts as a proxy for Gap. Specifically, Plaintiff only alleges that Gap embedded Clicktale's software code on its website (FAC ¶¶ 11, 29) to: 1) collect data Plaintiff voluntarily sent to Gap, and 2) transmit that data to Clicktale's servers so that Clicktale could "make[]the information available to [Gap]" (*id.* ¶ 23). Tellingly, Plaintiff fails to allege that Clicktale uses any information for its own benefit or purpose, or for anything other than website optimization. Plaintiff's own pleading therefore establishes that Clicktale's sole purpose for accessing any of her information was to provide website analytics as a service to Gap.

Notably, Plaintiff cites no case where a Court has deemed a service provider such as

---

[1] *See* Marin K. Levy, *Judging the Flood of Litigation*, 80 U.Chi. L. Rev. 1007, 1008 n.1 (2013).

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

2

DEFENDANT CLICKTALE, INC.'S REPLY
ISO MTD PLAINTIFF'S FAC
Case No. 3:20-cv-07575-LB

Clicktale a separate party for purposes of Section 631. Instead, Plaintiff contends that Clicktale is subject to Section 631 liability because its presence was allegedly unknown to Plaintiff. (Opp. at 5.) But even if true, these allegations are insufficient to give rise to liability. The construction of Section 631 makes clear that this provision criminalizes wiretapping by a third party, whose presence is not only unknown to the participants of a communication, but one who directly taps into a line of communication independently of the other parties. *See Rogers v. Ulrich*, 52 Cal. App. 3d 894, 899 (1975) (holding that "'Eavesdropping' is the problem the Legislature meant to deal with [in enacting Section 631]"). When CIPA was enacted, the legislature created an exception for "telephone communication systems," public utilities, and the use of any equipment furnished pursuant to tariffs of a public utility—*i.e.*, service provider equipment. 1988 Cal. Legis. Serv. ch. 111 § 4 at 9 (West). Clicktale is the modern day phone company that provides service provider equipment to facilitate communications; it is not a third-party eavesdropper. Consistent with this interpretation, this Court previously recognized that a SaaS provider like Clicktale was effectively a party to communications between a website and its users and was therefore not subject to Section 631 liability. *Graham*, No. 20-6903 (N.D. Cal. Apr. 8, 2021), ECF No. 51.[2]

None of Plaintiff's cited authorities compel a contrary result. To start, Plaintiff argues that the *Hytto* court rejected the same argument Clicktale advances here. (Opp. 3 (citing *S.D. v. Hytto Ltd.*, 2019 WL 8333519, at *7–8 (N.D. Cal. May 15, 2009)).) But the defendant in *Hytto* did not collect information on behalf of a party to a communication and could not be considered an extension of a party. The "communication" at issue in *Hytto* was between two individuals: Person A, after giving an electronic device to Person B, could control the device using an app. *Id.* The court held that the communication was thus between Person A and Person B. Defendant Hytto,

---

[2] In addition, *Javier v. Assurance IQ, LLC*, 2021 WL 940319, was decided on March 9, 2021 (after the filing of Clicktale's Motion) and presents an additional basis for dismissal of Plaintiff's claims. In *Javier*, the court dismissed wiretapping claims because the plaintiff later consented to a privacy policy that disclosed the use of session replay technology. Like *Javier*, Plaintiff accepted Gap's Terms of Use and Privacy Policy when making a purchase at Oldnavy.com, as explained in the prior motion to dismiss. (ECF No. 20.) Gap's privacy policy permits third parties like Clicktale to collect information related to Plaintiff's use of Gap's websites. *See supra* note 7. Given that Gap's Privacy Policy is not presently in the record (although it is discussed in the FAC), if the instant Motion is denied, Clicktale intends to move for judgment on the pleadings based on the arguments presented in *Javier*.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

3

DEFENDANT CLICKTALE, INC.'S REPLY
ISO MTD PLAINTIFF'S FAC
Case No. 3:20-cv-07575-LB

unlike Clicktale, was not deployed by one of these two persons as a means to relay information being sent to that person regardless. Rather, Hytto captured information for its own purposes, such as "the intensity level users select using the app, and the email address of users sending and receiving commands." *Id.* at *1. *Hytto* is unlike Clicktale because it was not a service provider, and instead eavesdropped on the parties' communications.

Plaintiff's reliance on *United States v. Eady*, 648 F. App'x 188, 192 (3d Cir. 2016) and *Lopez v. Apple, Inc.*, --- F. Supp. 3d ----, 2021 WL 823122, at *8 (N.D. Cal. Feb. 10, 2021), is similarly misplaced because neither defendant was a service provider acting on behalf of a party to the communication. (*See* Opp. 3.) In *Eady*, the defendant was an independent party who deceived employees into thinking they were calling each other but, in fact, the defendant initiated the calls and eavesdropped to learn confidential information and retaliate against the callers. 648 F. App'x at 189-90. *Apple* is similarly inapposite, as the plaintiffs there alleged that Apple was not acting on behalf of a party, but claimed Apple used Siri to surreptitiously record users' private conversations without their knowledge or consent, and contrary to its express representations. (*See* Opp. 3 (citing *Apple*, 2021 WL 823122, at *1)). None of these cases support imposition of liability here, let alone establish that Clicktale's argument "contradicts the pleadings." (Opp. at 3.)

**Second**, Plaintiff misconstrues *Powell*, *Membrila*, and *Rogers*, each of which support Clicktale's argument that it is exempt from Section 631 liability as a party to any communication. (Opp. at 5-6.) In *Powell*, the court assessed whether a party can be liable for allowing someone else to listen in on a call—it cannot. *Powell v. Union Pac. R.R. Co.*, 864 F. Supp. 2d 949, 954–56 (E.D. Cal. 2012). Plaintiff further claims that *Rogers* and *Membrila* are distinguishable because the first party "simply furnished a recording device." (Opp. at 5; *Membrila v. Receivables Performance Mgmt., LLC*, 2020 WL 1407274, at *2 (S.D. Cal. Apr. 6, 2010); *Rogers*, 52 Cal. App. 3d at 899.) That is exactly the point. As this Court has observed, there is no difference between a tape recorder that is turned on by a party to a communication and a SaaS tool implemented by that same party. *Graham*, No. 20-6903 (N.D. Cal. Apr. 8, 2021), ECF No. 51 at *8-9.

**Third**, Plaintiff asserts that Clicktale's argument that it is a party to the communication is contrary to the "text of the statute and relevant case law" and "would eviscerate aiding and abetting

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

4

DEFENDANT CLICKTALE, INC.'S REPLY
ISO MTD PLAINTIFF'S FAC
Case No. 3:20-cv-07575-LB

liability under the same scenarios described in *Ribas* and *In re Facebook III*." (Opp. 3-4.) This argument is confusing, as Plaintiff does not plead that Clicktale aided and abetted a wiretap. (FAC ¶¶ 50-60.) In any event, Plaintiff is wrong: it is her interpretation that is contrary to the statute and would drastically expand criminal liability to every website that uses service providers to analyze routine web traffic. Plaintiff claims that "Clicktale's position would mean that companies could hire undisclosed third parties to eavesdrop on communications with customers and evade liability by claiming the undisclosed eavesdropper was a 'party to the communication.'" (Opp. at 4.) In so arguing, Plaintiff misconstrues Clicktale's point—it cannot be that every time a party to a communication deploys software to analyze its own web traffic, the software service provider is eavesdropping or "listen[ing] secretly to a private conversation." *Rogers*, 52 Cal. App. 3d at 899.

*Facebook III*, *Revitch*, and *Ribas* are not to the contrary and do not support liability here. Clicktale supplied a software tool that allowed Gap to record website interactions. *Facebook III* requires that courts look to the "technical context" to determine the parties to a communication. *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 607–08 (9th Cir. 2020) ("*Facebook III*"). The technical context of *Facebook III*, where the court held Facebook was not a party, is very different than the technical context in this case. *See id.* at 596. There, Facebook allegedly embedded plug-ins on third-party websites to track users, even while those users were signed out of Facebook. *Id.* The alleged tracking was also not on behalf of a party to the communication, but for Facebook's own purposes, and was unrelated to supporting the function of the websites containing the plug-ins. *Id.* Facebook then allegedly sold these browsing histories to advertisers. *Id.* The court also observed that Facebook allegedly collected a trove of information used to create "cradle-to-grave" profiles about plaintiffs, contrary to their expectations and Facebook's stated policies. *Id.* at 599. In contrast, Plaintiff here alleges that Clicktale's software only operates while a user is on Gap's website and any information collected is used only by Gap. Plaintiff has not and could not contend this collection was not disclosed to users. She also fails to allege that this information is ever sold or disseminated or used for any targeting purposes. Plaintiff invites the Court to overlook the obvious factual differences with *Facebook III* by arguing that dissemination of user data is "not a required element of the claim." (Opp. at 7.) Not so. Clicktale, unlike Facebook, stands in the shoes

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

5

DEFENDANT CLICKTALE, INC.'S REPLY
ISO MTD PLAINTIFF'S FAC
Case No. 3:20-cv-07575-LB

of the website operator and the Court should not ignore this technical context.

Likewise, the Court should not follow *Revitch*, as that Court also failed to grapple with Clicktale's core contention here: that a SaaS provider stands in the shoes of the website that deploys its tools. *Revitch* is also inapposite, as the collection and use of data extended far beyond what is alleged here. There, the defendant allegedly "scan[ned] [plaintiff's] computer for files revealing his identity" when he visited the Moosejaw website. *Revitch v. New Moosejaw, LLC*, 2019 WL 5485330, at *1 (N.D. Cal. Oct. 23, 2019). NaviStone then allegedly provided this data to mail providers that sent mailers to plaintiff. *See* Def.'s Mot. to Dismiss at 2–3, *Moosejaw* (ECF No. 47) (N.D. Cal. June 5, 2019). No such "scanning" or "targeting" is alleged here.

Meanwhile, in *Ribas*, an attorney advising plaintiff's wife on a divorce settlement listened on an extension telephone to a conversation between the plaintiff and his wife, without the plaintiff's knowledge or consent. *Ribas v. Clark*, 38 Cal. 3d 355, 358 (1985). The attorney later used information he learned on the call to testify against plaintiff, utilizing what he had "learned' from the call for his own purpose. These facts are easily distinguishable from Clicktale, a software employed by a party to the communication. Clicktale was not a third party, who surreptitiously "learn[ed] the contents . . . of a communication" in violation of Section 631(a). *Contra id.* at 360 (quoting Cal. Pen. Code § 631). Clicktale is like the tape recorder in *Rogers*, **not** the attorney in *Ribas*.

**Fourth**, Plaintiff asserts that, even assuming Clicktale is a party to the communication, it may still be held liable since "CIPA is a two-party consent statute,"—*i.e.*, that it prohibits wiretapping without consent of all parties to a communication. (Opp. at 5.) This argument is contrary to well-established case law, the plain language of the statute, and Plaintiff's own concession that parties to communications cannot be liable under Section 631.[3] (*Id.* at 3.) *Warden v. Kahn*, 99 Cal. App. 3d 805, 811 (1979) ("[S]ection 631 . . . has been held to apply only to eavesdropping by a third party and not to recording by a participant to a conversation."); *In re*

---

[3] Plaintiff cites *Gruber v. Yelp Inc.*, 55 Cal. App. 5th 591, 607 (2020) to argue that Section 632 is a two-party consent statute. (Opp. at 5.) That reliance is misplaced as the court was assessing Section 632, not Section 631 liability. *People v. Windham*, 145 Cal. App. 4th 881, 889 (2006) is also inapposite as it neither involves a third-party service provider nor assesses whether separate consent is required under Section 631 for service providers.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

6

DEFENDANT CLICKTALE, INC.'S REPLY
ISO MTD PLAINTIFF'S FAC
Case No. 3:20-cv-07575-LB

*Facebook III*, 956 F.3d at 607. CIPA addresses "three distinct and mutually independent patterns of conduct": (1) "intentional wiretapping" of any telegraph or telephone wire, line, cable without authorization, (2) "willfully attempting to learn the contents or meaning of a communication in transit over a wire" without consent, and (3) "attempting to use or communicate information obtained as a result of engaging in either of the two previous activities." *In re Google Assistant Priv. Litig.*, 457 F. Supp. 3d 797, 825 (N.D. Cal. 2020) (internal quotation marks and citation omitted). Only the second category of conduct requires "all party consent." Although Plaintiff generically alleges a violation of all three provisions of the statute, nowhere does she plead that Clicktale ever "reads, or attempts to read, or [] learn the contents or meaning of any message" transmitted between her and Gap. Cal. Pen. Code § 631(a). To the contrary, she concedes that Clicktale's only role is to provide Gap information as a SaaS provider. Accordingly, the all-party consent rule does not apply. Likewise, Plaintiff's attempt to distinguish *Cohen* on the basis that the case involved application of a "one party consent statute" fails for the same reason.[4]

***Finally***, Plaintiff's argument contradicts the canon of "statutory interpretation that ambiguous penal statutes are construed in favor of defendants . . . [if] two reasonable interpretations of the same provision stand in relative equipoise." *People v. Avery*, 27 Cal. 4th 49, 58 (2002); *see Warden*, 99 Cal. App. 3d at 814, 818 n.3 (observing that as a penal statute, ambiguity in Section 631 should be interpreted narrowly). This principle should be applied here, where Plaintiff alleges no cognizable injury whatsoever, *supra* Section 1, yet seeks the severe penalty of $5,000 per alleged CIPA violation. (FAC ¶ 60.)

### 2.     The Information that Clicktale Allegedly Intercepted Is Not Content.

Plaintiff argues that Clicktale intercepted "content" by collecting "mouse clicks," "keystrokes" and "payment card information." (Opp. at 7-9.) Yet nowhere does she dispute that a significant portion of the information she alleges Clicktale unlawfully intercepted—*e.g.*, "mouse clicks . . .the date and time of the visit, the duration of the visit, Plaintiff's IP address, her location

---

[4] Plaintiff contradicts herself by claiming *Cohen* is distinguishable as a federal Wiretap Act case, while relying on federal Wiretap Act cases like *Luis*. "The analysis for a violation of CIPA is the same as that under the federal Wiretap Act." *NovelPoster v. Javitch Canfield Grp.*, 140 F. Supp. 3d 938, 954 (N.D. Cal. 2014). Indeed, *Cohen* is more factually analogous than *Luis* in that it involves a similar underlying technology.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

7

DEFENDANT CLICKTALE, INC.'S REPLY
ISO MTD PLAINTIFF'S FAC
Case No. 3:20-cv-07575-LB

at the time of the visit, her browser type, and the operating system on her device" (FAC ¶¶ 2, 33)—is unambiguously *not* content but "record information." *See In re Zynga Priv. Litig.*, 750 F.3d 1098, 1106 (9th Cir. 2014) (holding that "[c]ustomer record information" such as "name," "address," and "subscriber number or identity" do not fall within the ambit of the federal wiretapping act). Plaintiff's Section 631 claims should in the least be dismissed as to any record information.

### 3. Plaintiff Fails to Plead Statutory and Constitutional Standing in Support of Her Section 635 Claims.

Plaintiff must plead some form of injury to support standing for her Section 635 claim. CPC § 637.2(a); *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016). As Clicktale argued in its Motion, Plaintiff has not pled that Clicktale's manufacture, possession, or sale of an alleged wiretapping device caused her any injury whatsoever. (Mot. at 9-11; FAC ¶¶ 63-64.) Her Opposition does not contest this, and instead claims that the mere allegation of a statutory violation is sufficient to confer standing. (Opp. 9-11.) This is wrong. Without linking her claim to an alleged injury, Plaintiff's Section 635 claim must be dismissed for lack of both constitutional and statutory standing.

***First***, as to statutory standing, Plaintiff claims she has a private right of action under Section 635 by selectively quoting a different provision of the statute, which states: "it is not a necessary prerequisite to an action pursuant to this section that the plaintiff has suffered, or been threatened with actual damages." (Opp. at 10 (quoting Section 637.2).) But Plaintiff's argument ignores that the very first clause of the same statutory provision states the exact opposite—*i.e.*, that only persons "injured by a violation of this chapter may bring an action." CPC § 637.2(a). Here, Plaintiff fails to plead actual damages *or* non-economic injury. Plaintiff alleges that "Defendant recorded Plaintiff's electronic communications" (FAC ¶ 2); she had a "reasonable expectation that [her] PII and other data would remain confidential" (*id.* ¶ 73); and that "session recording technologies such as Clicktale's *can* leave users vulnerable to data leaks and the harm resulting therefrom." (*Id.* ¶ 25 (emphasis added).) Yet nowhere does she claim to have sustained any real or potential injury and certainly not as a result of Gap using Clicktale. Plaintiff's attempt to conflate "actual damages" and "injury" cannot save her Section 635 claim, which must be dismissed for this reason alone.

***Second***, Plaintiff also does not plead injury-in-fact to satisfy constitutional standing. In

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

8

DEFENDANT CLICKTALE, INC.'S REPLY
ISO MTD PLAINTIFF'S FAC
Case No. 3:20-cv-07575-LB

rebuttal to Clicktale's argument, Plaintiff does not identify any specific injury she has suffered, but cites *Revitch* and *Facebook* to claim that a bare statutory violation of Section 635 is sufficient to confer Article III standing. (Opp. at 9-11.) It is not.

*Revitch* is both distinguishable and wrongly decided. (Mot. at 10-11.) In contrast to *Revitch*, Plaintiff here fails to allege any specific injury, as discussed above. *Compare with supra* pp. 5-6. Further, the *Revitch* court wrongly concluded without **any** discussion or analysis that plaintiffs had sufficiently pled injury by parroting the statutory requirements and "alleged injuries traceable to Moosejaw's possession and use of the device." 2019 WL 5485330, at *3.

Plaintiff also incorrectly describes the holding in *Facebook III*, claiming that "the Ninth Circuit has held that wiretapping claims—including under CIPA—are beyond the scope of *Spokeo*." (Opp. at 10.) Not so. In *Facebook III*, the Ninth Circuit merely observed that CIPA Sections 631 and 632 "codif[ied] a substantive right to privacy, the violation of which gives rise to a concrete injury sufficient to confer standing." 956 F.3d at 598. Plaintiff presents no other case besides *Revitch* that holds mere manufacture, possession, or sale of a wiretapping device meets this concrete injury requirement for a Section 635 claim. With good reason: the "core provisions of [CIPA] regard[] interception and use of private communications." *Campbell v. Facebook, Inc.*, 951 F.3d 1106, 1118 (9th Cir. 2020). **That** is the right to privacy the *Facebook III* court recognized. There is no basis to find that mere manufacture, possession, or sale of an alleged eavesdropping device used by website operators to improve website performance violates this right. Interpreting the statute to permit such claims would be "constitutionally problematic." *Cohen*, 2018 WL 3392877, at *5; *see also In re Lenovo Adware Litig.*, 2016 WL 6277245, at *7 (N.D. Cal. Oct. 27, 2016) (finding that possession of a device alone does not justify Wiretap Act standing).

Finally, Plaintiff cites *Luis v. Zang* to support her 635 arguments. 833 F.3d 619 (6th Cir. 2016). There, the court denied a motion to dismiss where defendant allegedly violated the federal Wiretap Act "by manufacturing, marketing, and selling a violative device." *Id.* at 637. *Luis* is distinguishable because the device at issue was specifically marketed as a means for a non-party to illegally monitor another's communications. *Id.* at 634. That marketing went "far beyond" any legitimate purpose and defendant had knowledge that "it would be primarily used to illegally

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

9

DEFENDANT CLICKTALE, INC.'S REPLY
ISO MTD PLAINTIFF'S FAC
Case No. 3:20-cv-07575-LB

intercept communications." *Id.* at 634, 637. Focusing both on the role defendant took *and* what the device was marketed to do, the court determined that defendant "took a much more active role" in causing the alleged wiretap. *Id.* at 637. Here, by contrast, Plaintiff alleges general details about session replay technology and the fact that Clicktale "partnered" with Gap. (FAC ¶¶ 32-42.) There is no allegation that this information went beyond a legitimate purpose—to the contrary, Plaintiff previously conceded that Clicktale provided a tool to "improve [Gap's] website design and customer experience." (ECF No. 1 ¶ 15.)[5]

### 4. Plaintiff Fails to Plead that Clicktale's Technology Is a Device "Primarily or Exclusively Designed or Intended for Eavesdropping."

Plaintiff claims she has plausibly alleged Clicktale's code was "primarily or exclusively" designed for eavesdropping, pointing to allegations that Clicktale's code "is designed to gather PII, including keystrokes, mouse clicks and other electronic communications" (Opp. at 11; FAC ¶ 65) and that Clicktale's software provides a record of Gap website users' visits. (Opp. at 11-12; FAC ¶ 23.) Plaintiff does not allege or explain how "keystrokes" and "mouse clicks" qualify as PII in this context—certainly keystrokes and mouse clicks to search for and select a blouse on Oldnavy.com are not PII. And regardless, these conclusory allegations about the type of information collected are insufficient to allege that a cloud-based optimization tool used by many websites is intended for ***eavesdropping***, as required by the statute. *See* Cal. Pen. Stat. § 635.

Plaintiff once again relies almost exclusively on *Revitch* in her Opposition.[6] But *Revitch* merely concludes without any analysis that "the Court must assume the truth of Revitch's allegation that NaviStone's code is a 'device . . . primarily or exclusively designed or intended for eavesdropping.'" *Revitch*, 2019 WL 5484330, at *3 (quoting § 635). That reasoning is contrary to *Iqbal*, which holds that courts need not accept as true "threadbare recitals of a cause of action's elements, supported by mere conclusory statements." *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). The

---

[5] *Romero v. Securus Techs., Inc.*, 216 F. Supp. 3d 1078, 1088 (S.D. Cal. 2016) (Opp. 10-11) is inapposite because it involved Section 636 eavesdropping claims, rather than Section 635 claims.

[6] Plaintiff also cites *In re Carrier IQ, Inc.*, 78 F. Supp. 3d 1051 (N.D. Cal. 2015) (Opp. at 12), but that case is irrelevant. There, the court addressed whether transitory storage constitutes a real-time transmission as required by CIPA, an argument that Clicktale does not make in its Motion.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

10

DEFENDANT CLICKTALE, INC.'S REPLY
ISO MTD PLAINTIFF'S FAC
Case No. 3:20-cv-07575-LB

*Revitch* court should not have credited that plaintiff's regurgitation of the statutory elements of Section 635 and this Court should not duplicate its flawed holding. To do otherwise would be contrary to the common-sense conclusion that cloud-based website optimization tools that collect information at the behest of website operators are not wiretapping devices.

### B. Plaintiff Fails to Allege an Invasion of Privacy.

Plaintiff baselessly claims that it would be "reversible error" for this Court to find that she has failed to plead a violation of her constitutional right to privacy. (Opp. at 13.) Plaintiff agrees that Gap was entitled to receive any information she provided but posits that Clicktale violates website visitors' right to privacy when providing websites with routine website analytics. (Opp. at 13-17.) Notably, Plaintiff does not contend that any information Clicktale collected was reviewed, used, or disseminated to anyone other than Gap for the purpose of operating Gap's website. Nor does she identify any actual or potential injury from Clicktale's alleged collection of her routine retail website browsing information. This is hardly a violation of her privacy rights "so serious in nature, scope, and actual or potential impact as to constitute an egregious breach of the social norms." *Hernandez v. Hillsides, Inc.*, 47 Cal. 4th 272, 287 (2009) (internal quotation marks and citation omitted). Plaintiff does not come close to meeting any of the three required elements of pleading a violation of the right to privacy under California law, and her claims therefore should be dismissed. *See, e.g.*, *Moreno v. S.F. Bay Area Rapid Transit Dist.*, 2017 WL 6387764, at *8 (N.D. Cal. Dec. 14, 2017); *In re Yahoo Mail Litig.*, 7 F. Supp. 3d 1016, 1041 (N.D. Cal. 2014).

#### 1. Plaintiff Does Not Have a Legally Protected Privacy Interest.

Plaintiff fails to plead that she has the required autonomy or information privacy interest.

**Failure to show informational privacy:** Plaintiff fails to rebut Clicktale's informational privacy arguments. As explained in Clicktale's Motion, Plaintiff does not allege a legally protected privacy interest because: (1) even sensitive PII is not per-se subject to constitutional protection, and Plaintiff identifies no sensitive PII that was collected, let alone PII linked to her; (2) informational privacy claims are generally rejected where the claim arises from a plaintiff's use of a defendant's services; and (3) Plaintiff does not plead that her information was disseminated or misused in any fashion. (Mot. at 13-15.) Plaintiff offers no meaningful response to these arguments.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

11

DEFENDANT CLICKTALE, INC.'S REPLY
ISO MTD PLAINTIFF'S FAC
Case No. 3:20-cv-07575-LB

To start, Plaintiff does not explain how the information allegedly obtained is constitutionally protected, nor distinguishes the cases Clicktale cited that demonstrate the FAC's deficiency here. (Mot. at 13-15). Plaintiff instead makes the unsupported claim that the information Clicktale collects can be linked back to individuals, relying solely on a blog post that speculates unspecified "session replay products 'can't reasonably be expected to be kept anonymous.'" (Opp. at 13.) That certainly does not meet the *Iqbal's* plausibility requirement. Plaintiff then cites a series of cases to support the general proposition that "personal computers fall[] well-within the ambit of the first prong." (Opp. at 13.) These cases are inapposite. *In re Vizio, Inc., Consumer Priv. Litig.* involved allegations that defendants "collect[ed] an exceptionally vast array of information about [plaintiffs'] digital identities" including a "MAC address" that are either "linked to an individual's name" directly or can be used with the other "vast array" of information also collected to identify the individual. 238 F. Supp. 3d 1204, 1212, 1233 (C.D. Cal. 2017). Based on "the quantum and nature of the information collected, the purported failure to respect consumers' privacy choices, and the divergence from the standard industry practice," the court found plaintiffs' invasion of privacy allegations plausible. *Id.* at 1233. Meanwhile, in *Riley*, the Supreme Court unrelatedly recognized protections for cell phone searches, including all sensitive data included therein. *Riley v. California*, 573 U.S. 373, 374 (2014). Neither of these cases come close to the facts pled here.

In addition, Plaintiff rebuts only one of the many authorities Clicktale cites for this prong. She claims *In re Google Location Hist. Litig.* is distinguishable because Clicktale is "an *outside third party*" (Opp. at 14) but does not indicate why this distinction is meaningful. 428 F. Supp. 3d 185, 198 (N.D. Cal. 2019) ("*Google*") (dismissing informational privacy claim where (as here) defendant "only tracked and collected data during use of [defendant's] services."). It is not—as discussed above, her own allegations show that Clicktale is merely Gap's proxy.

Finally, as Clicktale explained, "[i]nformational privacy. . . . is the interest 'in precluding the dissemination or misuse of sensitive and confidential information. . . . to prevent unjustified embarrassment or indignity." *Alch v. Sup. Ct.*, 165 Cal. App. 4th 1412, 1423 (2008). While Plaintiff claims that the data being shared with Clicktale amounts to "dissemination," nowhere does she allege that any data was disseminated to an actual third party. Nor does she claim that anyone could

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

12

DEFENDANT CLICKTALE, INC.'S REPLY
ISO MTD PLAINTIFF'S FAC
Case No. 3:20-cv-07575-LB

even potentially misuse her information. (Mot. at 13.) To the contrary, Plaintiff only alleges the information was shared with Clicktale as Gap's service provider, to be used only for Gap's purposes. These allegations do not satisfy the "dissemination" or "misuse" requirement.

**Failure to show autonomy privacy:** Plaintiff cites no cases applying bodily autonomy in any remotely analogous context—*i.e.*, online shopping information input on a website and collected by that website's service provider. Autonomy privacy is akin to bodily autonomy (e.g., rights to obtain an abortion or not provide urine for a drug test) and contrary to Plaintiff's bald allegations, courts have not found "cause to extend the bodily autonomy line of cases to data autonomy." *Google*, 428 F. Supp. 3d at 198. Plaintiff erroneously claims that the court in *Google* did not consider whether to extend bodily autonomy to data autonomy, but the decision clearly and carefully considered the issue before rejecting the argument, *id.* (discussing several state courts precedents as to "whether the collection and storage of geolocation information interferes with autonomy and/or information privacy"). Further, Plaintiff misconstrues the *In re Google Assistant Priv. Litig.* court's holding as protecting online shopping information. (Opp. at 14.) That court found that recording conversations in plaintiffs' homes and using them for targeted advertising could be an invasion of privacy. 457 F. Supp. 3d at 831.

### 2. Plaintiff Does Not Have a Reasonable Expectation of Privacy.

Plaintiff pleads that she voluntarily transmitted information to Gap while shopping online and concedes in her Opposition that she had no expectation that her communications would be kept private from Gap. (Opp. at 15.) Nevertheless, she claims that Clicktale violated her subjective expectation that the information she voluntarily disclosed to Gap would be kept confidential even from Gap's service providers. Plaintiff's argument here rests on a single case, *Brown v. Google, LLC*, which involved far different circumstances—Google allegedly collected user data through its Chrome browser that was contrary to its alleged representations that those communications would not be collected when a user browsed in "incognito" mode. --- F. Supp. 3d ----, 2021 WL 949372, at *19-20 (N.D. Cal. Mar. 12, 2021). Like in *Facebook III*, and unlike here, Google allegedly collected a cradle-to-grave profile of user browsing history, including visits to sensitive websites, in violation of both user expectations and Google's representations. *Id.*; *Facebook III*, 956 F.3d at

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

13

DEFENDANT CLICKTALE, INC.'S REPLY
ISO MTD PLAINTIFF'S FAC
Case No. 3:20-cv-07575-LB

599, 603. The comprehensive and all-encompassing nature of the data collected in those cases is not remotely close to the allegations here, where a website collected data only as to its own website. Plaintiff's vague references to "demographics" that Clicktale *can* collect, (FAC ¶ 18) goes far beyond what she claims Clicktale collected about her. (FAC ¶ 1.) This case is about routine online clothing shopping information, only.

Besides the lack of apposite case law, Plaintiff's claims fail because a reasonable expectation of privacy must be based on "an objective entitlement founded on broadly based and widely accepted community norms." *Hill v. Nat'l Collegiate Athletic Ass'n*, 7 Cal. 4th 1, 37 (1994). Plaintiff's subjective and unreasonable suspicion that Gap would contradict its own privacy policy and keep information from its service providers does not meet this objective standard.[7]

### 3. Clicktale's Conduct Is Not Highly Offensive to a Reasonable Person.

Finally, Plaintiff cannot save her privacy claims by arguing that Clicktale's conduct was "highly offensive." Plaintiff bases her position on claims that (1) there is "no bright line on offensiveness" and this case presents factual issues that cannot be decided on a motion to dismiss; and (2) the Court should ignore California Court of Appeals precedent that routine commercial collection of information is not highly offensive. (Opp. at 16.) Neither argument is persuasive.

To start, Plaintiff incorrectly contends that "the question of whether Clicktale's conduct was sufficiently offensive raises a question of fact." (*Id.*) Even assuming the facts pled here to be true, courts routinely dismiss privacy claims based on far more egregious facts because privacy claims must meet an extraordinarily high bar." (Mot. 11, 15.).

The handful of courts that have denied dismissal of such claims did so based on readily distinguishable facts—*i.e.*, scanning users' computers to deanonymize website visitors and determine their identity, *Revitch*, 2019 WL 5485330, at *1, *3; using cell phone GPS data to "continually . . . log . . . precisely where [plaintiffs] live, work, park, dine, pick up children from school, worship, vote, and assemble" and then sell that data, *Goodman v. HTC Am., Inc.*, 2012 WL 2412070, at *14 (W.D. Wash. June 26, 2012) (internal quotation marks omitted); or "collect[ing]

---

[7] *See* https://www.gapinc.com/en-us/consumer-privacy-policy (last modified Sept. 22, 2020) ("We may share your personal information with . . . third parties as needed to carry out our business. . . .").

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

14

DEFENDANT CLICKTALE, INC.'S REPLY
ISO MTD PLAINTIFF'S FAC
Case No. 3:20-cv-07575-LB

an exceptionally vast array of information about [plaintiffs'] digital identities" contrary to customers' expectations. *Vizio*, 238 F. Supp. 3d at 1233. Nothing close to such facts are pled here.

Further, Plaintiff tries to distinguish *Folgelstrom* by arguing that the case did not involve "'surreptitious' acquisition of personal information," but it in fact involved collection of information far more "intrusive" than what is pled here—names and home addresses for individuals who had browsed the site anonymously. (Opp. at 16-17.) "Courts have frequently recognized that individuals have a substantial interest in the privacy of their home." *Folgelstrom v. Lamps Plus, Inc.*, 195 Cal. App. 4th 986, 990 (2011) (citation omitted). As here, the court in *Fogelstrom* held there was no privacy claim because the plaintiffs failed to allege the defendants used that information "for an offensive or improper purpose" rather than for "routine commercial behavior." *Fogelstrom*, 195 Cal. App. 4th at 992-93.

Plaintiff invites the Court to ignore a California appellate court in *Folgelstrom* and instead apply *Opperman*. *Opperman v. Path, Inc.*, 87 F. Supp. 3d 1018 (N.D. Cal. 2014); *Opperman v. Path, Inc.*, 205 F. Supp. 3d 1064, 1079 (N.D. Cal. 2016). Yet plaintiffs in both *Opperman* cases alleged that defendants copied users' entire cell phone address book without their consent, and that this practice thereby left "[plaintiffs'] private information vulnerable to unauthorized download" by third parties. *Opperman*, 87 F. Supp. 3d at 1032-33. No such facts are pled here; visiting a single website and having those limited interactions collected for analysis to help the website improve user functionality is hardly the same as uploading someone's Rolodex for reasons unconnected to the application's functionality. Even if these cases were similar, Judge Tigar acknowledged *Opperman* to be a novel interpretation of the case law, which generally finds commercial collection of customer data is not highly offensive. *See Opperman*, 205 F. Supp. 3d at 1077-78 (N.D. Cal. 2016) (listing contrasting decisions).

### III. CONCLUSION.

For these reasons, this Court should grant the Motion and dismiss all claims with prejudice.

Dated: April 9, 2021                                             COOLEY LLLP

                                                                 By: /s/ Michael G. Rhodes
                                                                     Michael G. Rhodes
248032170                                                        Attorneys for Defendant Clicktale, Inc.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

15

DEFENDANT CLICKTALE, INC.'S REPLY
ISO MTD PLAINTIFF'S FAC
Case No. 3:20-cv-07575-LB