**BURSOR & FISHER, P.A.**
L. Timothy Fisher (State Bar No. 191626)
Joel D. Smith (State Bar No. 244902)
Blair E. Reed (State Bar No. 316791)
1990 North California Boulevard, Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-Mail: ltfisher@bursor.com
jsmith@bursor.com
breed@bursor.com

*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

AMBER YALE, individually and on behalf of all others similarly situated,

Plaintiff,

v.

CLICKTALE, INC.,

Defendant.

Case No. 3:20-cv-07575-LB

**SECOND AMENDED CLASS ACTION COMPLAINT**

**JURY TRIAL DEMANDED**

Plaintiff Amber Yale ("Plaintiff"), individually and on behalf of all others similarly situated, by and through her attorneys, makes the following allegations pursuant to the investigation of her counsel and based upon information and belief, except as to allegations specifically pertaining to herself and her counsel, which are based on personal knowledge.

## NATURE OF THE ACTION

1. This is a class action suit brought against Defendant Clicktale, Inc. ("Clicktale" or "Defendant") for wiretapping the electronic communications of visitors to websites (the "Websites")[1] owned and operated by The Gap, Inc. ("The Gap"). The wiretaps, which are embedded in the computer code on the Websites, are used by Defendant to secretly observe and record website visitors' keystrokes, mouse clicks,[2] and other electronic communications, including the entry of Personally Identifiable Information ("PII"), in real time. By doing so, Defendant has violated the California Invasion of Privacy Act ("CIPA"), Cal. Penal Code §§ 631 and 635, and invaded Plaintiff's and Class Members' privacy rights in violation of the California Constitution.

2. In October 2020, Ms. Yale visited Oldnavy.com, one of the Websites. During the visit, Defendant captured, stored, and analyzed Plaintiff's electronic communications in real time, including Plaintiff's mouse clicks and keystrokes, and payment card information.

3. Plaintiff brings this action on behalf of herself and a class of all persons whose electronic communications were intercepted through the use of Defendant's wiretap on the Websites.

## THE PARTIES

4. Plaintiff Amber Yale is a California citizen who resides in Santa Cruz, California. Ms. Yale is domiciled and intends to remain in California. In October 2020, prior to the filing of this lawsuit, Ms. Yale visited Oldnavy.com and made a purchase. Ms. Yale was in Santa Cruz when she visited the website. During the visit, Ms. Yale viewed and used the website, and did the

[1] GAP, https://www.Gap.com/; OLD NAVY, https://oldnavy.gap.com/; ATHLETA, https://athleta.gap.com/; BANANA REPUBLIC, https://bananarepublic.gap.com/; HILL CITY, https://hillcity.gap.com/.

[2] As used herein, the term "mouse clicks" also refers to "touch gestures" such as the "tap," "swipe," and similar gestures used on touchscreen devices.

kinds of things people typically do when visiting a website, like scrolling through Old Navy's web pages, clicking on items of interest, and entering her payment card information to make a purchase. During the visit, Ms. Yale's keystrokes, mouse clicks, and other electronic communications—including the entry of her payment card information—were intercepted in real time by Defendant Clicktale and disclosed to Defendant Clicktale through the wiretap. Ms. Yale was unaware at the time that her keystrokes, mouse clicks, and other electronic communications were being intercepted in real-time and would be disclosed to Clicktale, nor did Ms. Yale consent to the same.

5. Defendant Clicktale, Inc. is an Israeli corporation with its principal place of business at Atrium Tower, 2 Jabotinsky Street, Ramat Gan, Tel Aviv 5250501.

6. Clicktale is a marketing software-as-a-service ("SaaS") company.

7. Clicktale provides a feature called "Event-Triggered Recorder," which is at issue here and is described more fully below. At all relevant times here, Clicktale's "Event-Triggered Recorder" feature is employed by The Gap on the Websites.

**JURISDICTION AND VENUE**

8. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d)(2)(A) because this case is a class action where the aggregate claims of all members of the proposed class are in excess of $5,000,000.00, exclusive of interest and costs, and at least one member of the proposed class is citizen of state different from at least one Defendant.

9. This Court has personal jurisdiction over Defendants because each of the Defendants have purposefully availed themselves of the laws and benefits of doing business in this State, and Plaintiff's claims arise out of each of the Defendants' forum-related activities. Furthermore, a substantial portion of the events giving rise to Plaintiff's claims occurred in this District.

10. Pursuant to 28 U.S.C. § 1391, this Court is the proper venue for this action because a substantial part of the events, omissions, and acts giving rise to the claims herein occurred in this District.

11. Defendant also purposefully directed its activities at California, and the wiretapping at issue here arises from or relates to Defendant's activities. As alleged more fully below, Defendant's software was intentionally installed on the Websites. Defendant purposefully

intercepted electronic transmissions from users of the Websites. The conduct also was expressly aimed at California residents. California is the largest market in the United States—indeed, if California were its own nation, California would have the fifth largest economy in the world. Defendant knew that a significant number of Californians would visit the Websites because they form a significant portion of The Gap's customer base. Indeed, as alleged further, Clicktale wiretaps geolocation information, and therefore knows it is wiretapping users in California. Further, The Gap is headquartered in California. By intercepting the transmissions of users of the Websites, Defendant targeted its wrongful conduct at customers, some of whom Defendant knew, at least constructively, were residents of California. It was foreseeable that Defendant's interceptions and wiretapping would harm Plaintiff and similarly-situated individuals, and that at least some of this harm would occur in California—where Defendant knew many customers and prospective customers resided.

12. Defendant has also waived defenses related to personal jurisdiction and venue by failing to make them on its prior motions to dismiss. *See* Fed. R. Civ. P. 12(h)(1)(A).

## STATEMENT OF FACTS

### I. Overview Of The Wiretaps

13. Defendant Clicktale develops a software of the same name that provides marketing analytics. One of Clicktale's features is called "Event-Triggered Recorder."

14. Event-Triggered Recorder is a type of "Session Replay" technology. Session replay technologies work by using "embedded snippets of code … [that] watch and record a visitor's every move on a website, in real time."[3] These include cart and checkout experiences.

15. Event-Triggered Recorder provides a real-time recording of a user's interactions on a website, while those same interactions are being transmitted over the Internet.

16. Clicktale touts that Event-Triggered Recorder "**track[s] every visitor from the**

[3] Tomas Foltyn, *What's the Deal with Session-Replay Scripts?*, WELIVESECURITY, Apr. 20, 2018, https://www.welivesecurity.com/2018/04/20/whats-deal-session-replay-scripts/.

**start**."[4] Until recently, Clicktale told its prospective customers:

> Watch replays of your users' browsing sessions **to visualize exactly what they're seeing and doing on your site**. Desktop or mobile – **everything is captured**, enabling proactive, strategic optimizations based on actual user behavior patterns.

(Emphasis added).

17. Clicktale says that Event-Triggered Recorder allows companies to "[v]iew visitor playbacks of mobile or desktop sessions to understand how users interact with your content" and to "[h]olistically track target segments and specific events with recordings of 100% of relevant users, heatmaps, conversion funnels, form analytics, mouse tracking and more."

18. After this lawsuit commenced, Clicktale removed certain information about its session replay features from its website.

19. The removed information includes an admission by Clicktale that its software allows its clients to "[v]isualize the customer experience and hone in on your users' true intent." Website owners who use Clicktale's software can also "[f]ilter session replays by user environment, mouse movements, demographics, traffic sources, navigation parameters, in-page behavior, and more. Watch multiple session recordings of a particular page **or follow individual visitors' sessions from start to completion**." (Emphasis added).

20. In a document previously filed by Clicktale in this case, it admitted that its software "**track[s] every visitor from the start**, and then keep[s] what counts."

21. Clicktale operates on both desktop and mobile devices.

22. The screenshot below shows how a mock user's session would be recorded and displayed in Clicktale's interface. As can be seen, the recording includes a play, rewind, and fast forward buttons.

//

//

//

//

---

[4] Event-Triggered Recorder, https://www.clicktale.com/media/1978/event-triggered-recorder.pdf (emphasis added).

23. Clicktale's code is not a cookie at all, much less a run-of-the-mill cookie. Common cookies that consumers might be familiar with do not engage in session recording or all of the features described throughout this complaint. Clicktale's code does far more than simply track where a visitor went on the internet, and its functionality is not limited to aggregate data. Rather, as a 2017 study by Princeton University researchers noted, "unlike typical analytics services that provide aggregate statistics, these scripts are intended for the recording and playback of individual browsing sessions, as if someone is looking over your shoulder."

24. Clicktale's technology is new. Hence, it is not ubiquitous, routine Internet activity. The Internet functioned for many years without session recording technology, and the Internet can

and will continue to operate just fine without session recording technology.

25. Session recording companies like Clicktale are part of a new and quickly rising sector. In 2019, the session recording market size was approximately $205 million. The market size is expected to reach $921 million by the end of 2026. Thus, companies like Clicktale and its competitors are slowly bringing Big Brother to the internet, where every single thing we do, type, and see on the internet is recorded and analyzed.

26. Technology like Clicktale's is not only highly intrusive, but dangerous. The 2017 study by Princeton University researchers found that session recording technologies were collecting sensitive user information such as passwords and credit card numbers. The research notes that this wasn't simply the result of a bug, but rather insecure practices. Thus, session recording technologies such as Clicktale's can leave users vulnerable to data leaks and the harm resulting therefrom.

27. Further, as the 2017 Princeton University study researchers recognized, "the extent of data collected by these services **<u>far exceeds user expectations</u>** [1]; text typed into forms is collected before the user submits the form, and precise mouse movements are saved, all without any visual indication to the user. This data can't reasonably be expected to be kept anonymous."

28. Clicktale's business model involves being paid by website owners to monitor user interactions with said websites.

29. Despite this, Clicktale's parent company, Contentsquare, makes clear that Clicktale shall not "be deemed to be an employee, agent, partner nor legal representative of the other for any purpose."

30. One website owner who pays for Clicktale's services is The Gap.

31. Pursuant to an agreement with Clicktale, The Gap voluntarily embedded Clicktale's software code on its Websites. This allowed Clicktale to surreptitiously collect interactions between The Gap and website users.

32. Clicktale software operates on The Gap's Websites in the manner alleged throughout this complaint.

33. The 2017 study by Princeton University researchers describes Clicktale and other

session replay providers as "third-party scripts."

34. As currently deployed, Clicktale's software functions as a wiretap.

## II. Clicktale Did More Than Just Provide A Recording Device To The Gap: It Was An Active Participant In The Wiretapping

35. According to Clicktale's patent, Clicktale begins tracking user interactions with a website, such as mouse clicks, keystrokes, and the like. *Method and System for Monitoring an Activity of a User*, Patent No. 9,508,081, at 6:30-31 (Nov. 29, 2016) ("While a web page is displayed the user can perform various activities that are monitored by the tracking code."). This monitoring is done simultaneously with the user interactions (*i.e.*, "While a web page is display").

36. Notably, this tracking "can be done without asking for affirmation from the user." *Id.* at 17:9-10.

37. Clicktale compresses and buffers user activity information "in order to limit the overall resources (such as bandwidth) allocated to the transmission of user activity" because "**highly detailed** user activity information is acquired." *Id.* at 7:10-13.

38. Clicktale's patent also confirms that user activities are transmitted to Clicktale's server. Clicktale's server "includes an interface, adapted to receive compressed user activity information representative of activities performed by the user during a visit to a web page." *Id.* at 5:33-35; *see also id.* at 15:22-25 ("Once logged in, the subscriber can see what sessions … are available on the server.").

39. However, Clicktale does more than store user activities, it analyzes them as well. According to the patent:

> The reconstructed session information may be analyzed … by itself or with other sessions of the same user or other users to result in information such as but not limited to: what parts of the page users see most (based on scrolling and window size data); how much time the user or users interact with the page as opposed to how much time the page was open (based on load, unload events versus mouse, scrolling, and keyboard events).

*Id.* at 14:53-61.

40. Moreover, Clicktale allows these session replays to be made available for "third party processing." If requested by the website owner, Clicktale will make the session replay data

"available to the subscriber in some standard format, such as XML" to share with other third parties. *Id.* at 14:62-67.

41. Finally, Clicktale uses the session replay data for its own benefit. Clicktale's parent company, Contentsquare (which, upon information and belief, now owns and operates Clicktale), has a master service agreement that confirms Defendant Clicktale has access to the communications recorded by its software and uses the communications for its own benefit:

- Website owners must allow Clicktale to disclose user information not just to its employees, but its authorized representatives, including "consultants[] and contractors."
- Website owners must "grant[] Contentsquare and its Affiliates a non-exclusive, perpetual, worldwide, royalty-free, right and license to compile and use Customer Data, strictly in order to research, develop, modify, improve or support the services provided by Contentsquare."

42. For these reasons, Clicktale's software is also not a simple tape recorder or screen recording software. Tape recorders or screen recorders do not allow the company that manufacturers or develops the product or software to also have access to the recordings. Nor do such products analyze recorded data or use other sources to identify users. Clicktale's software, however, does both of these things. It not only has access to interactions between consumers and websites—interactions for which Clicktale was not the intended recipient—but it also allows that information to be provided to other third parties, and make use of other third-party technologies to identify users.

**III. Clicktale Wiretapped Plaintiff's Electronic Communications**

43. In October 2020, Ms. Yale visited Oldnavy.com and made a purchase. During the visit, Ms. Yale performed behaviors on Oldnavy.com such as scrolling through Old Navy's web pages, clicking on items of interest, and entering her payment card information to make a purchase.

44. Because Plaintiff was making a purchase on The Gap's website, she believed that she was only communicating with The Gap, and only intended to provide their information and interactions to The Gap. She did not believe, nor did she intend, to provide her information and

electronic communications to other entities, at least without proper consent.

45. During that visit, and upon information and belief, the Event-Triggered Recorder feature in Clicktale's software captured each of Plaintiff's keystrokes, mouse clicks, and other electronic communications on Oldnavy.com, which it then analyzed and compiled into a recording. The Clicktale wiretap also captured the date and time of the visit, the duration of the visit, Plaintiff's IP address, her location at the time of the visit, her browser type, and the operating system on her device.

46. Clicktale's recording of keystrokes, mouse clicks, data entry, and other electronic communications begins the moment a user accesses or interacts with the Websites.

47. Clicktale itself captures, stores, and analyzes electronic communications with the Websites. Clicktale provides recordings of these communications to The Gap, but Clicktale itself—an unintended recipient of the communications—still has access to that data.

48. Clicktale has repeatedly stated that it is "a party" to any communications captured by its technology, both within its motions to dismiss in this case and elsewhere. Hence, it has repeatedly admitted that it accessed communications. For example, on January 8, 2021, in its initial Motion to Dismiss, Clicktale argued it "merely acts as a proxy for Gap, and as such, is a first party to any communication between Plaintiff and Gap." ECF No. 20, at 14:3-4; *see also id.* at 13:18-19 ("Clicktale cannot be considered a third party to Plaintiff's communications, but rather as a first party to Plaintiff's communications."). On February 19, 2021, in its Motion to Dismiss Plaintiff's First Amended Complaint, Clicktale argued it was "a party to the underlying communications." ECF No. 28, at 6:12-13; *see also id.* at 7:10-11 ("Clicktale is a first party to Plaintiff's communications"); *id.* at 7:23-24 ("Clicktale merely acts as a proxy for Gap, and as such, is a first party to any communication between Plaintiff and Gap."). And on April 9, 2021, in its Reply in Further Support of its Motion to Dismiss Plaintiff's First Amended Complaint, Clicktale argued that "as a service provider, it fits within the statute's well-established party exception." ECF No. 30, at 2:13; *see also id.* at 4:18 (arguing that Clicktale "is exempt from Section 631 as a party to any communication").

49. When users access the Websites and make a purchase, they enter their PII.

Clicktale's software captures these electronic communications throughout each step of the process. Even if users do not complete the form, the Websites nonetheless capture users' electronic communications throughout his or her visit.

50. Clicktale's software captures, among other things:

(a) The user's mouse clicks;

(b) The user's keystrokes;

(c) The user's email address;

(d) The user's shipping address;

(e) The user's payment card information, including card number, expiration date, and CVV code;

(f) The user's IP address;

(g) The user's their location at the time of the visit; and

(h) The user's browser type and the operating system on their devices

51. Crucially, The Gap does not ask users, including Plaintiff, whether they consent to being wiretapped by Clicktale. Users are never actively told that their electronic communications are being wiretapped by Clicktale.

52. Further, the Privacy Policy is located at the very bottom of the Websites' home page with no notice directing users to the Privacy Policy, *i.e.* the hyperlink to the Privacy Policy functions as browsewrap. And even though users are presented with a hyperlink to The Gap's Privacy Policy at the end of the checkout process, Clicktale began recording users long before this moment, *i.e.*, any purported disclosure was made *after* the wiretap had already begun.

53. Moreover, users are not on notice of the hyperlink to the Privacy Policy when they click the "Place Order" button.

54. Therefore, users like Plaintiff never agree or are never given the option to agree to the Privacy Policy when using the Websites, nor are they on notice of the Privacy Policy.

55. Even if users do agree to the Privacy Policy by using the Websites or otherwise—and they do not for the reasons stated above—Gap does not mention any aspect of Clicktale or its Event-Triggered Recorder (such as that users will have their mouse clicks and keystrokes recorded

in real time) in the Websites' Privacy Policy.  In addition, as the 2017 Princeton University study researchers recognized, "the extent of data collected by these services **far exceeds user expectations**."  As such, users do not agree to be wiretapped even if they agree to the Privacy Policy.

56. The language in The Gap's Privacy Policy is a far cry from the language in Contentsquare's Privacy Policy, which states that Contentsquare collects "behavioral information," including "mouse or touch movements, scrolls, mouse clicks, screen taps or zoom information; time of engagement, etc."

57. Indeed, unlike The Gap, other companies actively disclose the use of session recording technology on their websites by implementing a pop-up screen that a user must acknowledge before advancing further on the website.  That practice goes to show that companies know how to disclose the use of session recording technology when they want to.

58. Neither Plaintiff nor any Class member consented to being wiretapped on the Websites, nor to have their communications recorded and shared with Clicktale.  Any purported consent that was obtained was ineffective because (i) the wiretapping began from the moment Plaintiff and Class members accessed the Websites; (ii) the Privacy Policy did not disclose the wiretapping or Clicktale; and (iii) the hyperlink to the Privacy Policy is inconspicuous and therefore insufficient to provide notice.

59. In short, when Plaintiff and other Class members accessed The Gap's Websites, their electronic communications with The Gap—which were only intended for The Gap—were surreptitiously captured, stored, and analyzed by Clicktale, who was not an intended party to these communications.  Unlike a simple cookie, Clicktale software does far more than simply track where a visitor went on the internet.  And unlike a simple tape recorder or screen recorder, the data Clicktale captures leaves the "Gap ecosystem" because Clicktale—an unintended "third party auditor" to Plaintiff's communications—has access to the communications, can analyze those communications, can combine those communications with identifiers such as cookies to identify specific users, and put the session replay data in a format that allows it to be shared with other third parties.  Such software not only allows Clicktale, as enabled by The Gap, to build a comprehensive

image of users, it constitutes wiretapping. The Gap also did not obtain proper consent from users, and did not properly disclose Clicktale in its Privacy Policy.

## CLASS ACTION ALLEGATIONS

60. Plaintiff seeks to represent a class of all California residents who visited the Websites, and whose electronic communications were intercepted or recorded by Clicktale. Plaintiff reserves the right to modify the class definition as appropriate based on further investigation and discovery obtained in the case.

61. Members of the Class are so numerous that their individual joinder herein is impracticable. On information and belief, members of the Class number in the thousands. The precise number of Class members and their identities are unknown to Plaintiff at this time but may be determined through discovery.

62. Common questions of law and fact exist as to all Class members and predominate over questions affecting only individual Class members. Common legal and factual questions include, but are not limited to, whether Defendant violated the California Invasion of Privacy Act ("CIPA"), Cal. Penal Code § 631 and invaded Plaintiff's privacy rights in violation of the California Constitution; and whether class members are entitled to actual and/or statutory damages for the aforementioned violations.

63. The claims of the named Plaintiff are typical of the claims of the Class because the named Plaintiff, like all other class members, visited the Websites and had her electronic communications intercepted and disclosed to Clicktale through the use of Clicktale's wiretaps.

64. Plaintiff is an adequate representative of the Class because her interests do not conflict with the interests of the Class members she seeks to represent, she has retained competent counsel experienced in prosecuting class actions, and she intends to prosecute this action vigorously. The interests of Class members will be fairly and adequately protected by Plaintiff and her counsel.

65. The class mechanism is superior to other available means for the fair and efficient adjudication of the claims of Class members. Each individual Class member may lack the resources to undergo the burden and expense of individual prosecution of the complex and extensive litigation

necessary to establish Defendant's liability. Individualized litigation increases the delay and expense to all parties and multiplies the burden on the judicial system presented by the complex legal and factual issues of this case. Individualized litigation also presents a potential for inconsistent or contradictory judgments. In contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court on the issue of Defendant's liability. Class treatment of the liability issues will ensure that all claims and claimants are before this Court for consistent adjudication of the liability issues.

66. Plaintiff brings all claims in this action individually and on behalf of members of the Class against Defendant.

## COUNT I
## Violation Of The California Invasion Of Privacy Act, Cal. Penal Code § 631

67. Plaintiff repeats the allegations contained in the foregoing paragraphs as if fully set forth herein.

68. Plaintiff brings this claim individually and on behalf of the members of the proposed Class against Defendant.

69. To establish liability under section 631(a), Plaintiff need only establish that Defendant, "by means of any machine, instrument, contrivance, or in any other manner," did any of the following:

> Intentionally taps, or makes any unauthorized connection, whether physically, electrically, acoustically, inductively or otherwise, with any telegraph or telephone wire, line, cable, or instrument, including the wire, line, cable, or instrument of any internal telephonic communication system,
>
> *Or*
>
> Willfully and without the consent of all parties to the communication, or in any unauthorized manner, reads or attempts to read or learn the contents or meaning of any message, report, or communication while the same is in transit or passing over any wire, line or cable or is being sent from or received at any place within this state,
>
> *Or*

> Uses, or attempts to use, in any manner, or for any purpose, or to communicate in any way, any information so obtained,
>
> *Or*
>
> Aids, agrees with, employs, or conspires with any person or persons to unlawfully do, or permit, or cause to be done any of the acts or things mentioned above in this section.

70. Section 631(a) is not limited to phone lines, but also applies to "new technologies" such as computers, the Internet, and email. *See Matera v. Google Inc.*, 2016 WL 8200619, at *21 (N.D. Cal. Aug. 12, 2016) (CIPA applies to "new technologies" and must be construed broadly to effectuate its remedial purpose of protecting privacy); *Bradley v. Google, Inc.*, 2006 WL 3798134, at *5-6 (N.D. Cal. Dec. 22, 2006) (CIPA governs "electronic communications"); *In re Facebook, Inc. Internet Tracking Litigation*, 956 F.3d 589 (9th Cir. 2020) (reversing dismissal of CIPA and common law privacy claims based on Facebook's collection of consumers' Internet browsing history).

71. The California Supreme Court has twice explained that the "express objective" of CIPA is to "protect a person placing or receiving a call from a situation where the person on the other end of the line permits an outsider to tap his telephone or listen in on the call." *Ribas v. Clark*, 696 P.2d 637, 642 (Cal. 1985); *Smith v. LoanMe*, 483 P.3d 869, 879 (Cal. 2021) ("As [the California Supreme Court] explained in *Ribas* … a substantial distinction has been recognized between the secondhand repetition of the contents of a conversation and its simultaneous dissemination to an unannounced second auditor, whether that auditor be a person or mechanical device."). The Ninth Circuit similarly explained that one of the purposes of wiretapping statutes is "to prevent the acquisition of the contents of a message by an unauthorized third-party or 'an unseen auditor.'" *In re Facebook Internet Tracking Litig.*, 956 F.3d at 608.

72. Clicktale's software, including the Event-Triggered Recorder feature, is a "machine, instrument, contrivance, or … other manner" used to engage in the prohibited conduct at issue here.

73. At all relevant times, Clicktale intentionally tapped, electrically or otherwise, the lines of internet communication between Plaintiff and Class Members on the one hand, and The Gap's Websites on the other hand.

74. The actionable "content" at issue here falls under two categories. The first category involves the webpages and URLs that Plaintiff viewed while on the website. The second covers Plaintiff's keystrokes, mouse clicks, form field entries, and any other information Plaintiffs intentionally provided to The Gap while on the website. These categories include the webpages that Plaintiff saw, and the information she provided on each webpage, when The Gap asked for information about the Plaintiff.

75. At all relevant times, Clicktale, willfully and without the consent of all parties to the communication, or in any unauthorized manner, read or attempted to read or learn the contents or meaning of electronic communications of Plaintiff and putative Class Members, while the electronic communications were in transit or passing over any wire, line or cable or were being sent from or received at any place within California.

76. Plaintiff and Class Members did not consent to any of The Gap's actions in enabling Clicktale to wiretap visitors to the Websites. Nor have Plaintiff nor Class Members consented to Defendant's intentional access, interception, reading, learning, recording, and collection of Plaintiff and Class Members' electronic communications.

77. Clicktale's recording of Plaintiff and Class Members' electronic communications occurs in real time.

78. The violation of section 631(a) constitutes an invasion of privacy sufficient to confer Article III standing.

79. Unless enjoined, Defendant will continue to commit the illegal acts alleged here. Plaintiff continues to be at risk because she frequently uses the internet for shopping, and she continues to desire to use the internet for that purpose, including for the purpose of shopping for clothing. Defendant Clicktale provides its software, including the Event-Triggered Recorder feature, to many other website operators who offer a wide array of services. For many websites that Plaintiff may or is likely to visit in the future, she has no practical way to know if her website communications will be monitored or recorded by Clicktale.

80. Plaintiff and Class Members seek all relief available under Cal. Penal Code § 637.2, including injunctive relief and statutory damages of $5,000 per violation.

**COUNT II**
**Violation Of The California Invasion Of Privacy Act, Cal. Penal Code § 635**

81. Plaintiff repeats the allegations contained in the foregoing paragraphs as if fully set forth herein.

82. Plaintiff brings this claim individually and on behalf of the members of the proposed Class against Defendant.

83. California Penal Code § 635 provides, in pertinent part:

> Every person who manufactures, assembles, sells, offers for sale, advertises for sale, possesses, transports, imports, or furnishes to another any device which is primarily or exclusively designed or intended for eavesdropping upon the communication of another, or any device which is primarily or exclusively designed or intended for the unauthorized interception or reception of communications between cellular radio telephones or between a cellular radio telephone and a landline telephone in violation of Section 632.5, or communications between cordless telephones or between a cordless telephone and a landline telephone in violation of Section 632.6 , shall be punished by a fine not exceeding two thousand five hundred dollars.

84. At all relevant times, Defendant intentionally manufactured, assembled, sold, offered for sale, advertised for sale, transported, imported, and/or furnished a wiretap device that is primarily or exclusively designed or intended for eavesdropping upon the communication of another.

85. Clicktale's code is a "device" that is "primarily or exclusively designed" for eavesdropping. That is, the Clicktale's code is designed to gather PII, including keystrokes, mouse clicks, and other electronic communications.

86. Plaintiffs and Class Members did not consent to The Gap's actions in enabling Clicktale to wiretap visitors to the Websites, nor did they consent to Clicktale wiretapping their electronic communications.

87. Unless enjoined, Defendant will continue to commit the illegal acts alleged here. Plaintiff continues to be at risk because she frequently uses the internet for shopping, and she continues to desire to use the internet for that purpose, including for the purpose of shopping for clothing. Defendant Clicktale provides its software, including the Event-Triggered Recorder

feature, to many other website operators who offer a wide array of services. For many websites that Plaintiff may or is likely to visit in the future, she has no practical way to know if her website communications will be monitored or recorded by Clicktale.

88. The violation of section 635 constitutes an invasion of privacy sufficient to confer Article III standing.

89. Plaintiff and Class Members seek all relief available under Cal. Penal Code § 637.2, including injunctive relief and statutory damages of $5,000 per violation.

## COUNT III
## Invasion Of Privacy Under California's Constitution

90. Plaintiff repeats the allegations contained in the foregoing paragraphs as if fully set forth herein.

91. Plaintiff brings this claim individually and on behalf of the members of the proposed Class against Defendant.

92. Plaintiff and Class Members have an interest in: (1) precluding the dissemination and/or misuse of their sensitive, confidential PII; and (2) making personal decisions and/or conducting personal activities without observation, intrusion or interference, including, but not limited to, the right to visit and interact with various Internet sites without being subjected to wiretaps without Plaintiff's and Class Members' knowledge or consent.

93. At all relevant times, Defendant intentionally invaded Plaintiff's and Class Members' privacy rights under the California Constitution.

94. Plaintiff and Class Members had a reasonable expectation that their PII and other data would remain confidential and that The Gap would not install wiretaps on the Websites.

95. Plaintiff and Class Members did not consent to any of Defendant's actions in The Gap implementing Clicktale's wiretaps on the Websites.

96. This invasion of privacy is serious in nature, scope and impact.

97. This invasion of privacy alleged here constitutes an egregious breach of the social norms underlying the privacy right.

98. Plaintiff and Class Members seek all relief available for invasion of privacy claims under California's Constitution.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, seeks judgment against Defendant, as follows:

(a) For an order certifying the Class under Rule 23 and naming Plaintiff as the representative of the Class and Plaintiff's attorneys as Class Counsel to represent the Class;

(b) For an order declaring that the Defendant's conduct violates the statutes referenced herein;

(c) For an order finding in favor of Plaintiff and the Class on all counts asserted herein;

(d) For compensatory, punitive, and statutory damages in amounts to be determined by the Court and/or jury;

(e) For prejudgment interest on all amounts awarded;

(f) For an order of restitution and all other forms of equitable monetary relief;

(g) For injunctive relief as pleaded or as the Court may deem proper; and

(h) For an order awarding Plaintiff and the Class their reasonable attorneys' fees and expenses and costs of suit.

**DEMAND FOR TRIAL BY JURY**

Pursuant to Federal Rules of Civil Procedure 38(b), Plaintiff demands a trial by jury of all issues so triable.

Dated: May 6, 2021

Respectfully submitted,

**BURSOR & FISHER, P.A.**

By: *_/s/ Joel D. Smith_*
Joel D. Smith

L. Timothy Fisher (State Bar No. 191626)
Joel D. Smith (State Bar No. 244902)

Blair E. Reed (State Bar No. 316791)
1990 North California Boulevard, Suite 940
Walnut Creek, CA  94596
Telephone: (925) 300-4455
Facsimile:  (925) 407-2700
E-Mail:  ltfisher@bursor.com
               jsmith@bursor.com
               breed@bursor.com

*Attorneys for Plaintiff*