COOLEY LLP
MICHAEL G. RHODES (116127) (rhodesmg@cooley.com)
KYLE C. WONG (224021) (kwong@cooley.com)
AARTI G. REDDY (274889) (areddy@cooley.com)
3 Embarcadero Center, 20th Floor
San Francisco, CA 94111-4004
Telephone:    (415) 693-2000
Facsimile:    (415) 693-2222

CHARLES A. WOOD (310702) (cwood@cooley.com)
1299 Pennsylvania Ave., NW, Suite 700
Washington, DC  20004
Telephone:    (202) 842-7800
Facsimile:    (202) 842-7899

Attorneys for Defendant
CLICKTALE, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| AMBER YALE, individually and on behalf of all others similarly situated,<br><br>                    Plaintiff,<br><br>        v.<br><br>CLICKTALE, INC.,<br><br>                    Defendant. | Case No. 3:20-cv-07575-LB<br><br>**DEFENDANT CLICKTALE, INC.'S MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED CLASS ACTION COMPLAINT PURSUANT TO FEDERAL RULES OF CIVIL PROCEDURE 12(B)(1) AND 12(B)(6)**<br><br>Hearing Date:        August 26, 2021<br>Hearing Time:        9:30 a.m.<br>Judge:                Honorable Laurel Beeler |

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION. ..................................................................................................... 1

II. BACKGROUND. ...................................................................................................... 2

III. LEGAL STANDARD. .............................................................................................. 6

IV. THE SAC FAILS TO STATE A CLAIM. ................................................................ 7

    A. Plaintiff Fails to State a Claim Under CIPA. ............................................. 7

        1. Clicktale is not Liable Under Section 631 Because it was a Party to the Underlying Communication. ................................................................. 7

        2. Plaintiff also Fails to Plead that the Content of her Communications was Intercepted. ..................................................................................... 14

        3. Plaintiff Fails to Allege Sufficient Facts to Support a Section 635 Claim. ..................................................................................................... 14

            a. Plaintiff lacks constitutional or statutory standing to bring a Section 635 claim against Clicktale. ........................................... 15

            b. Clicktale's Event Triggered Recorder technology is not a device "primarily or exclusively designed" for eavesdropping. ..................................................................... 17

    B. Plaintiff Fails to Allege an Invasion of Privacy Under the California Constitution. ............................................................................................... 18

        1. Plaintiff Fails to Allege a Legally Protected Privacy Interest. .................. 19

        2. Plaintiff Fails to Allege a Reasonable Expectation of Privacy. ................ 21

        3. Plaintiff Fails to Allege Clicktale's Conduct Was a Serious Invasion of Privacy. ............................................................................... 22

V. CONCLUSION. ..................................................................................................... 24

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

- i -

DEFENDANT CLICKTALE, INC.'S MOTION TO DISMISS
PLAINTIFF'S SECOND AMENDED COMPLAINT
Case No. 3:20-cv-07575-LB

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alch v. Superior Ct.*,
   165 Cal. App. 4th 1412 (2008) ................................................................................ 21

*Allen v. Quicken Loans Inc.*,
   No. 17-12352, 2018 WL 5874088 (D.N.J. Nov. 9, 2018) .................................... 15

*Associated Gen. Contractors v. Metro. Water Dist.*,
   159 F.3d 1178 (9th Cir. 1998).................................................................................. 6

*Belluomini v. Citigroup, Inc.*,
   No. CV 13-01743, 2013 WL 3855589 (N.D. Cal. July 24, 2013) ...................... 18

*Brodsky v. Apple Inc.*,
   445 F. Supp. 3d 110 (N.D. Cal. 2020) .................................................................... 8

*Cabral v. Supple, LLC*,
   No. EDCV 12-85, 2012 WL 12895825 (C.D. Cal. Oct. 3, 2012)........................ 20

*Cahen v. Toyota Motor Corp.*,
   717 F. App'x 720 (9th Cir. 2017) ......................................................................... 16

*Cohen v. Casper Sleep, Inc.*,
   Nos. 17cv9325, 17cv9389, 17cv9391, 2018 WL 3392877 (S.D.N.Y. July 12,
   2018) ................................................................................................................ 15, 22

*DirecTV, Inc. v. Treworgy*,
   373 F.3d 1124 (11th Cir. 2004)............................................................................. 16

*In re DoubleClick, Inc. Priv. Litig.*,
   154 F. Supp. 2d 497 (S.D.N.Y. 2001)............................................................. 17, 18

*Dyloco v. Mazda Motor of Am., Inc.*,
   No. 3:20-cv-09099 (N.D. Cal. Apr. 13, 2021), ECF No. 36.................................... 2

*Eminence Cap., LLC v. Aspeon, Inc.*,
   316 F.3d 1048 (9th Cir. 2003)............................................................................... 24

*In re Facebook Internet Tracking Litig.*,
   263 F. Supp. 3d 836 (N.D. Cal. 2017) .................................................................. 17

*In re Facebook, Inc. Internet Tracking Litig.* (*Facebook*),
   956 F.3d 589 (2020).....................................................................................*passim*

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1

**TABLE OF AUTHORITIES**
**CONTINUED**

2                                                                                         **Page(s)**

3    *Folgelstrom v. Lamps Plus, Inc.*,
        195 Cal. App. 4th 986 (2011) ............................................................. 23
4

5    *Friends of Yosemite Valley v. Norton*,
        348 F.3d 789 (9th Cir. 2003)................................................................ 17
6

     *In re Google Android Consumer Priv. Litig.*,
7        No. 11-MD-02264, 2013 WL 1283236 (N.D. Cal. Mar. 26, 2013)........................................ 23

8    *In re Google Inc. Cookie Placement Consumer Priv. Litig.*,
        806 F.3d 125 (3d Cir. 2015)................................................................ 8
9

10   *In re Google Location Hist. Litig.*,
        428 F. Supp. 3d 185 (N.D. Cal. 2019) ............................................................. 19, 21
11

     *In re Google, Inc. Priv. Pol'y Litig.*,
12       58 F. Supp. 3d 968 (N.D. Cal. 2014) ............................................................. 17, 22

13   *Graham v. Noom, Inc.*,
        No. 3:20-cv-06903, --- F. Supp. 3d ---, 2021 WL 1312765 (N.D. Cal. Apr. 8,
14       2021) (Beeler, Mag.)..........................................................................*passim*

15   *Hernandez v. Hillsides, Inc.*,
        47 Cal. 4th 272 (2009) ............................................................. 18
16

17   *Hill v. Nat'l Collegiate Athletic Ass'n*,
        7 Cal. 4th 1 (1994) ............................................................. 19, 21
18

19   *In re iPhone Application Litig.*,
        844 F. Supp. 2d 1040 (N.D. Cal. 2012) ............................................................. 23

20   *Jacome v. Spirit Airlines Inc.*,
        No. 2021-000947-CA-01 (Fla. Miami-Dade Cnty. Ct. June 17, 2021) ................................. 13
21

22   *Kendall v. Visa U.S.A., Inc.*,
        518 F.3d 1042 (9th Cir. 2008)................................................................ 6
23

24   *In re Lenovo Adware Litig.*,
        No. 15-md-02624, 2016 WL 6277245 (N.D. Cal. Oct. 27, 2016)................................. 16

25   *London v. New Albertson's, Inc.*,
        No. 08-CV-1173, 2008 WL 4492642 (S.D. Cal. Sept. 30, 2008)........................... 20
26

27   *Low v. LinkedIn Corp.*,
        900 F. Supp. 2d 1010 (N.D. Cal. 2012) ............................................................. 17, 22
28

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1
2

**TABLE OF AUTHORITIES**
**CONTINUED**

Page(s)

3
4
*Luis v. Zang,*
833 F.3d 619 (6th Cir. 2016) (Batchelder, J. dissenting) ...................... 15

5
*Lujan v. Defs. of Wildlife,*
504 U.S. 555 (1992) .......................................................................... 7

6
7
*McCoy v. Alphabet, Inc.,*
No. 20-CV-05427-SVK, 2021 WL 405816 (N.D. Cal. Feb. 2, 2021) ................... 13

8
9
*Membrila v. Receivables Performance Mgmt., LLC,*
No. 09-cv-2790, 2010 WL 1407274 (S.D. Cal. Apr. 6, 2010) ................... 7

10
*Moreno v. S.F. Bay Area Rapid Transit Dist.,*
No. 17-cv-02911, 2017 WL 6387764 (N.D. Cal. Dec. 14, 2017) ................... 19

11
12
*NovelPoster v. Javitch Canfield Grp.,*
140 F. Supp. 3d 938 (N.D. Cal. 2014) ....................................... 15

13
14
*Onn v. Carnival Corp.,*
No. 5:20-cv-07929 (N.D. Cal. Apr. 12, 2021), ECF No. 65 ................... 2

15
*Padilla v. Yoo,*
678 F.3d 748 (9th Cir. 2012) ....................................................... 6

16
17
*In re Palmdale Hills Prop., LLC,*
654 F.3d 868 (9th Cir. 2011) ....................................................... 6

18
19
*Pareto v. FDIC,*
139 F.3d 696 (9th Cir. 1998) ....................................................... 6

20
*People v. Avery,*
27 Cal. 4th 49 (2002) ................................................................. 7

21
22
*Popa v. Harriet Carter Gifts, Inc.,*
No. 2:19-cv-00450 (W.D. Pa. June 17, 2021), ECF No. 116 ................... 2

23
24
*Rahman v. Pac. Gas & Elec. Co.,*
No. 3:20-cv-09315 (N.D. Cal. April. 12, 2021), ECF No. 51 ................... 2

25
*Republic of Ecuador v. Mackay,*
742 F.3d 860 (9th Cir. 2014) ....................................................... 15

26
27
*Revitch v. Navistone, Inc.,*
No. 3:18-cv-06827 (N.D. Cal. June 10, 2021), ECF No. 181 ................... *passim*

28
*Rogers v. Ulrich,*
52 Cal. App. 3d 894 (1975) ........................................................... 8

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

- iv -

DEFENDANT CLICKTALE, INC.'S MOTION TO DISMISS
PLAINTIFF'S SECOND AMENDED COMPLAINT
Case No. 3:20-cv-07575-LB

1

**TABLE OF AUTHORITIES**
**CONTINUED**

2

Page(s)

3

*Ruiz v. Gap, Inc.*,

4

540 F. Supp. 2d 1121 (N.D. Cal. 2008), *aff'd*, 380 F. App'x 689 (9th Cir. 2010) ................................................................................................... 1, 24

5

*Scott v. Breeland*,

6

792 F.2d 925 (9th Cir. 1986) ....................................................................... 7

7

*Smith v. Fresno Irrigation Dist.*,

8

72 Cal. App. 4th 147 (1999) ...................................................................... 20

9

*In re Sony Grand Wega KDF-E A10/A20 Series Rear Projection HDTV Television Litig.*,

10

758 F. Supp. 2d 1077 (S.D. Cal. 2010) ..................................................... 10

11

*Spokeo, Inc. v. Robins*,

136 S. Ct. 1540 (2016) ............................................................................... 15

12

*United States v. Santos*,

13

553 U.S. 507 (2008) ................................................................................... 13

14

*In re Vizio, Inc., Consumer Priv. Litig.*,

15

238 F. Supp. 3d 1204 (C.D. Cal. 2017) ..................................................... 20

16

*Warden v. Kahn*,

99 Cal. App. 3d 805 (1979) .......................................................................... 7

17

*Watson v. Weeks*,

18

436 F.3d 1152 (9th Cir. 2006) ..................................................................... 6

19

*White v. Lee*,

20

227 F.3d 1214 (9th Cir. 2000) ..................................................................... 6

21

*In re Yahoo Mail Litig. (Yahoo)*,

7 F. Supp. 3d 1016 (N.D. Cal. 2014) ............................................ 19, 20, 21, 22

22

*Yunker v. Pandora Media, Inc.*,

23

No. 11-CV-03113, 2013 WL 1282980 (N.D. Cal. Mar. 26, 2013) ........................ 23

24

*In re Zynga Priv. Litig.*,

25

750 F.3d 1098 (9th Cir. 2014) ................................................................... 14

26

27

28

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

- v -

DEFENDANT CLICKTALE, INC.'S MOTION TO DISMISS
PLAINTIFF'S SECOND AMENDED COMPLAINT
Case No. 3:20-cv-07575-LB

1

**TABLE OF AUTHORITIES**
**CONTINUED**

2

Page(s)

3

**Statutes**

4

18 U.S.C.

5

§ 2511, et. al. ...................................................................................... 5, 13, 14, 15, 16

§ 2511(2)(c) .............................................................................................................. 8

6

§ 2511(2)(d) .............................................................................................................. 8

§ 2512 ................................................................................................................ 15, 16

7

§ 2512(1)(b) ............................................................................................................ 16

§ 2520(a) ................................................................................................................. 16

8

Cal. Penal Code

9

§ 631 ................................................................................................................ *passim*

§ 632 ....................................................................................................................... 15

10

§ 635 ................................................................................................................ *passim*

§ 637.2 ................................................................................................................ 1, 15

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Cooley LLP
Attorneys at Law
San Francisco

- vi -

Defendant Clicktale, Inc.'s Motion to Dismiss
Plaintiff's Second Amended Complaint
Case No. 3:20-cv-07575-LB

**NOTICE OF MOTION AND MOTION TO DISMISS**

PLEASE TAKE NOTICE that on August 26, 2021, at 9:30 a.m., or as soon thereafter as the motion may be heard in Courtroom B, 15th Floor of the San Francisco Courthouse, located at 450 Golden Gate Avenue, San Francisco, CA 94102, pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), defendant Clicktale, Inc. ("Clicktale") will and hereby does move to dismiss the causes of action in plaintiff Amber Yale's ("Plaintiff") Second Amended Class Action Complaint filed on May 6, 2021 (ECF No. 32) ("SAC").  This motion is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the declaration of Aarti G. Reddy, the Request for Judicial Notice and Incorporation by Reference, the pleadings on file in this matter, oral argument of counsel, and such other materials and argument as may be presented in connection with the hearing of the motion.

**STATEMENT OF RELIEF SOUGHT**

Clicktale respectfully seeks an order dismissing the SAC's causes of action with prejudice for lack of standing and failure to state a claim upon which relief can be granted.

**STATEMENT OF ISSUES TO BE DECIDED**

1.      Whether Plaintiff states a claim under the California Invasion of Privacy Act ("CIPA"), California Penal Code Sections 631 and 635.

2.      Whether Plaintiff has Article III standing to pursue a claim under Section 635 of CIPA.

3.      Whether Plaintiff states a claim under the California Constitution for Invasion of Privacy.

FIRM NAME
ATTORNEYS AT LAW
OFFICE ADDRESS

DEFENDANT CLICKTALE, INC.'S MOTION TO DISMISS
PLAINTIFF'S SECOND AMENDED COMPLAINT
Case No. 3:20-cv-07575-LB

## I.   INTRODUCTION.

As this Court previously observed, Clicktale's Event Triggered Recorder technology is not a wiretap.  Rather, Clicktale provides "software as a service" that collects website information for Gap, Inc. ("Gap"), as directed by Gap, and that Gap itself could collect.  After three attempts to plead a viable complaint, Plaintiff still does not allege that Clicktale independently analyzes the data it collects for Gap, or that it disseminates, sells or uses that data for any of its own purposes.  Plaintiff's claims must once again be dismissed.  Further, because any additional amendment would be futile, the Court should now dismiss with prejudice.

All of Plaintiff's claims again fail as they still have not pled that Clicktale is a third-party eavesdropper.  The Ninth Circuit requires courts to examine the "technical context" of a case in applying the party exemption to Section 631.  Here, Plaintiff concedes that "Clicktale's feature is employed by The Gap" as a "software-as-a-service ('SaaS') company" (SAC ¶¶ 7, 6), and describes the many ways *Gap* (not Clicktale) might be able to use the data Clicktale collects on Gap's behalf.  Plaintiff's contrived allegations to avoid the party exemption are both unconvincing and pled as hypotheticals.  The SAC offers only stray quotes from a Clicktale patent and a form agreement that are both untethered to Gap's actual implementation of Clicktale's tools and consistent with the conclusion that Clicktale's role is to collect and analyze website visitor data for Gap, as specifically directed by Gap.

Plaintiff's Section 635 claim also fails for myriad reasons.  Not only has Plaintiff failed to plead an unlawful wiretap, she invites the Court to recognize a private right of action under Section 635 in contravention of the clear statutory language of Section 637.2, fails to allege how Clicktale's manufacturing of the code caused her any injury, and does not properly plead—as she must—that Clicktale's code is a device "primarily or exclusively designed or intended for eavesdropping."

Plaintiff also fails to sufficiently plead an invasion of privacy that meets the high bar for violations of the California Constitution.  As Plaintiff cannot even recall what information she provided on the Gap website other than that she "viewed and used the website, and did the kinds of things people typically do when visiting a website," she cannot demonstrate a reasonable expectation of privacy regarding information she freely provided to a public website and does not

1    allege was ever disseminated beyond that website's service provider.  (*Id.* ¶ 4.)

2          Plaintiff's inability to state a claim for relief is unsurprising; the conduct that she seeks to

3    criminalize encompasses an extraordinary volume of routine communications that take place many

4    times every second on almost every website on the Internet.  Were this Court to allow such claims

5    to proceed, countless service providers that collect and analyze data on behalf of websites—ranging

6    from Amazon Web Services to Google Analytics—could be subject to severe penalties, as would

7    the websites that use them.  The Court should decline Plaintiff's invitation to drastically expand the

8    scope of California wiretapping and privacy laws, which would open the litigation floodgates.

9          Since Clicktale's last motion to dismiss, Plaintiff's counsel have voluntarily dismissed a

10   number of the many copycat session replay cases they had filed in this District.[1]  Even in *Revitch*,

11   Plaintiff's lodestar authority, the named plaintiff withdrew his class action claims before Judge

12   Chhabria dismissed his individual claims on the eve of a hearing on the parties' cross motions for

13   summary judgment.  Judge Chhabria held that plaintiff could not show that the Navistone code

14   actually collected or intercepted any data from his visits to the website.[2]  Consistent with trend, this

15   Court should affirm its prior holding that service providers like Clicktale are not wiretaps and

16   should once again dismiss Plaintiff's claims, this time with prejudice.

17   **II.    BACKGROUND.**

18         Defendant Clicktale provides "a feature called 'Event-Triggered Recorder'" as one of the

19   tools available to websites that hire it as a "software-as-a-service ('SaaS')."  (SAC ¶¶ 7, 6 (referred

20   to both throughout as "Event Triggered Recorder" and "session replay" technology).)  Plaintiff

21

22   [1] Notice of Voluntary Dismissal without Prejudice, *Dyloco v. Mazda Motor of Am., Inc.*, No. 3:20-cv-09099 (N.D. Cal. Apr. 13, 2021), ECF No. 36; Notice of Voluntary Dismissal without Prejudice,

23   *Onn v. Carnival Corp.*, No. 5:20-cv-07929 (N.D. Cal. Apr. 12, 2021), ECF No. 65; Notice of Voluntary Dismissal without Prejudice, *Rahman v. Pac. Gas & Elec. Co.*, No. 3:20-cv-09315 (N.D.

24   Cal. April. 12, 2021), ECF No. 51.
     [2] Order Dismissing Case for Lack of Jurisdiction, *Revitch v. Navistone, Inc.*, No. 3:18-cv-06827

25   (N.D. Cal. June 10, 2021), ECF No. 181.  Additionally, earlier today, a federal court in Pennsylvania granted summary judgment in favor of the same technology provider in *Revitch*,

26   Navistone, under Pennsylvania's wiretapping statute, concluding that "[t]here was not an interception of information under [the Pennsylvania statute] because Navistone was a direct party

27   to the communications at issue."  Opinion, *Popa v. Harriet Carter Gifts, Inc.*, No. 2:19-cv-00450 at *5 (W.D. Pa. June 17, 2021), ECF No. 116.  The court held that a website's use of Navistone's

28   technology was akin to the placement of a cookie on a browser, as Clicktale argues here, and agreed with the Third Circuit's analysis that service providers are not wiretappers.  *Id.* at *10-13.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

2

DEFENDANT CLICKTALE, INC.'S MOTION TO DISMISS
PLAINTIFF'S SECOND AMENDED COMPLAINT
Case No. 3:20-cv-07575-LB

1    Amber Yale claims to have visited the Old Navy website on one occasion in October 2020.  (*Id.* ¶¶

2    2, 4.)  She further alleges that during that visit, Clicktale "captured" her "electronic

3    communications" including "payment card information," "keystrokes, mouse clicks . . . . the date

4    and time of the visit, the duration of the visit, Plaintiff's IP address, her location at the time of the

5    visit, her browser type, and the operating system on her device." (*Id.* ¶¶ 2, 45.)  Plaintiff further

6    contends that this "capture" was an unlawful wiretap that violated Cal. Penal Code §§ 631 and 635

7    and the California Constitution.  (*Id.* ¶ 1.)

8            Clicktale previously moved to dismiss Plaintiff's First Amended Complaint, arguing, *inter*

9    *alia*, that Clicktale's capture of Gap's communications was not an unlawful wiretap because

10   Clicktale is only a service provider that stands in the shoes of websites like Old Navy and collects

11   data on Gap's behalf.  (ECF No. 28 at 6-9.)[3]  The Court agreed and dismissed the First Amended

12   Complaint.  (ECF No. 31 at 1-2.)  In particular, the Court held "Clicktale is not a third-party

13   eavesdropper. It is a vendor that provides a software service that allows its clients to monitor their

14   website traffic."  (*Id.* at 5.)  The Court went on to state that its recent analysis in another similar

15   case brought by the same Plaintiff's counsel (*Graham v. Noom, Inc.*, No. 3:20-cv-06903, --- F.

16   Supp. 3d ---, 2021 WL 1312765 (N.D. Cal. Apr. 8, 2021) (Beeler, Mag.)) "applies here: (1) for the

17   section 631(a) claim, the plaintiff does not plausibly plead Clicktale's wiretapping; (2) there is no

18   section 635(a) claim because there is no wiretapping; and (3) because there is no plausible

19   wiretapping, the plaintiff does not plead a legally protected privacy interest for her invasion-of-

20   privacy claim under the California Constitution." (*Id.*)  In *Graham*, this Court held that FullStory,

21   the session replay provider in that case, merely "provides a tool – like the tape recorder in *Rogers*

22   – that allows [a website] to record and analyze its own data in aid of [the website]'s business. . . .

23   It is not a third-party eavesdropper." *Graham*, 2021 WL 1312765, at *5.  Moreover, at the dismissal

24   hearing in *Graham*, the Court highlighted that FullStory provides "a platform for analytics" and

25   questioned how the provision of such a platform was sufficient to establish "liability for third-party

26   _____

27   [3] Plaintiff filed her original complaint on October 28, 2020, naming both Clicktale and Gap as
     defendants.  (ECF No. 1.)  Clicktale and Gap filed a motion to compel arbitration, or in the
28   alternative dismiss the complaint, raising many of the same arguments presented here.  (ECF No.
     20.)  Rather than opposing this motion, Plaintiff voluntarily dismissed her complaint against Gap
     and amended her complaint against Clicktale.  (ECF Nos. 23, 24.)

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

3

DEFENDANT CLICKTALE, INC.'S MOTION TO DISMISS
PLAINTIFF'S SECOND AMENDED COMPLAINT
Case No. 3:20-cv-07575-LB

1   eavesdropping." (*Graham*, ECF No.[4] 56 at 11.)  At that same hearing, plaintiff's counsel tacitly

2   admitted that session replay providers act as a website service provider, stating that a session replay

3   provider "does just provide it to [a website]" and suggested that there would be no wiretap "if [the

4   website] had some proprietary session replay software and they were to do the recording themselves

5   on their own website." (*Id.* at 10; 9.)

6       On May 6, 2021, Plaintiff filed a Second Amended Complaint in which she continues to

7   allege that Clicktale is a "software-as-a-service" provider and focuses on Clicktale's general role

8   in facilitating access to data analytics for unspecified website providers.  (E.g., SAC ¶ 19

9   (Clicktale's "software *allows its clients* to [v]isualize the customer experience and hone in on your

10   users true intent.") (internal quotation marks omitted and emphasis added); *id.* at 17 ("Clicktale . .

11   . *allows companies* to [v]iew visitor playbacks of mobile or desktop sessions to understand how

12   users interact with your content") (internal quotation marks omitted and emphasis added).)

13       Plaintiff's core allegations have not changed.  The SAC asserts the same causes of action

14   and the same theory of liability that this Court previously dismissed—i.e., "[a]s currently deployed,

15   Clicktale's software functions as a wiretap." (*Id.* ¶ 34.)  Plaintiff does not describe in detail how

16   Clicktale's technology is purportedly implemented by Gap (or other websites, for that matter).

17   Instead, she includes alleged screen shots of *a* Clicktale tool operating on *a* hypothetical website,

18   offering no detailed allegations describing how Clicktale's service was implemented by Gap and

19   how that leads her to believe that her information was collected.[5] (*Id.* ¶¶ 19-24.)  Plaintiff also

20   alleges again that Gap "pays for Clicktale's services" and that "upon information and belief, the

---

[4] References to "*Graham*, ECF No." refer to pleadings filed in *Graham v. Noom, Inc.*, No. 3:20-cv-06903 (N.D. Cal.)

[5] Plaintiff reuses an online article purporting to provide a general description of "[s]ession replay technology" that is not specific to Clicktale.  (SAC ¶ 14 n.3 (internal quotation marks omitted).) The article goes on to admit that "there is no known case of a compromise of user data due to session replay scripts." (*Id.*)  Likewise, Plaintiff again repeatedly references a 2017 blog post they optimistically call a "study by Princeton University," that is neither cited nor attached to her SAC. (*Id.* ¶¶ 23, 26, 27, 33, 55.)  This blogpost specifically excludes Clicktale from its analysis "because [the authors] were unable to make the practical arrangements to analyze the script's functionality at scale." Steven Englehardt, No boundaries: Exfiltration of personal data by session-reply scripts, Freedom to Tinker n.3 (Nov. 15, 2017), https://freedom-to-tinker.com/2017/11/15/no-boundaries-exfiltration-of-personal-data-by-session-replay-scripts/. The SAC contains no allegation that the process as described in the article mirrors implementation of Clicktale's technology on Old Navy's website, and any reference to this article or study is irrelevant and should treated by the Court as such.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

4

DEFENDANT CLICKTALE, INC.'S MOTION TO DISMISS
PLAINTIFF'S SECOND AMENDED COMPLAINT
Case No. 3:20-cv-07575-LB

Event-Triggered Recorder feature in Clicktale's software captured each of Plaintiff's keystrokes, mouse clicks, and other electronic communications on Oldnavy.com, which it then analyzed and compiled into a recording."[6]  (*Id.* ¶¶ 30, 45.)  The SAC, however, does not sufficiently describe any keystroke, mouse click, or other communications that Clicktale allegedly captured.  She also does not describe how she was supposedly harmed by Clicktale's collection of her retail browsing habits on Gap's behalf.  (*Id.* ¶¶4.)

Plaintiff attempts to demonstrate that Clicktale is more than just a service provider to the websites that hire it by adding several new allegations regarding Clicktale's hypothetical ability to analyze data on unspecified websites.  First, Plaintiff offers stray quotes from an alleged Clicktale patent that is not attached to the SAC.  (*Id.* ¶¶ 35-40.)  But the SAC notably fails to allege that this patent is related to the software at issue in this case—i.e., Clicktale's Event Triggered Recorder technology as implemented on Old Navy's website.  Indeed, the SAC does not allege that the technology described in these patents was ever even incorporated into ***any*** of Clicktale's technology, let alone the version of that technology implemented by Gap.  The features discussed in this patent, moreover, are all those that a service provider might offer, such as:  collecting website visitor interactions with the website for the website owner (*id.* at ¶ 35); compressing this information so that the website owner can access it easier (*id.* at ¶ 37); transmitting this information to Clicktale's servers for the website owner to access it (*id.* at ¶ 38); and allowing the website owner to analyze this information to provide a better website (*id.* ¶ 39).  Furthermore, each of these alleged features is couched in provisional language such as "the user can perform" (*id.* at ¶ 35), "can be done" (*id.* at ¶ 36), "may be analyzed" (*id.* at ¶ 39), and "[i]f requested by the website owner" (*id.*

---

[6] Plaintiff incorrectly alleges that "Gap does not mention any aspect of Clicktale or its Event-Triggered Recorder (such as that users will have their mouse clicks and keystrokes recorded in real time) in the Websites' Privacy Policy."  (*Id.* ¶ 55.)  In fact, Gap's Privacy Policy in effect when Plaintiff visited the Old Navy website stated "We collect information about you . . . . while you interact with our websites, mobile or other apps, social media sites, and other products and services."  It also states "[w]hen you visit one of our websites or use our mobile apps we may collect your device identifier such as IP address or MAC address, as well as browser and settings information, shopping preferences, and information about how you interact with our websites and other digital products" and "[w]e may also collect information from other sources, including for example, joint marketing partners, data analytics firms, public databases, publicly available social media pages, and other third parties we work with."  (*See Gap Inc. Privacy Policy*, (June 3, 2021), https://www.gapinc.com/en-us/consumer-privacy-policy ("Gap Privacy Policy").)

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

5

DEFENDANT CLICKTALE, INC.'S MOTION TO DISMISS
PLAINTIFF'S SECOND AMENDED COMPLAINT
Case No. 3:20-cv-07575-LB

1    at ¶ 40)—leaving it unclear what features Plaintiff alleges Clicktale provided to Gap.

2           Second, Plaintiff points to language in Clicktale's parent company Contentsquare's generic

3    master services agreement that it can use user data to "improve or support the services provided by

4    Contentsquare" as supposed evidence that Clicktale "has access to the communications recorded

5    by its software and uses the communications for its own benefit." (*Id.* ¶ 41.)  Setting aside the fact

6    that service providers often access data to provide a service, Plaintiff does not claim that Gap and

7    Clicktale executed the master services agreement.   Further, Plaintiff also does not allege that

8    Clicktale actually accessed or used her (or anyone else's) communications it allegedly collected on

9    Gap's behalf, much less that it did so for its own purposes.  (*Id.*)

10          Finally, Plaintiff amasses various citations to instances where Clicktale has argued in legal

11   filings that it should be treated as "a party" to communications captured by its technology,

12   insomuch as it steps into the shoes of its customers as a service provider.  (*Id.* ¶ 48.)  However, this

13   legal argument does not, as Plaintiff contends, amount to an "admi[ssion] that [Clicktale] accessed

14   communications" other than as a service provider.  (*Id.* ¶ 48).

15   **III.    LEGAL STANDARD.**

16          Rule 12(b)(6) provides for dismissal of an action for "failure to state a claim upon which

17   relief can be granted."  *See* Fed. R. Civ. P. 12(b)(6).  For a 12(b)(6) motion, "all well-pleaded

18   allegations of material fact [are accepted as true], and construe[d] in the light most favorable to the

19   non-moving party."  *Padilla v. Yoo*, 678 F.3d 748, 757 (9th Cir. 2012).  "[C]onclusory allegations

20   of law and unwarranted inferences" are insufficient.  *Associated Gen. Contractors v. Metro. Water

21   Dist.*, 159 F.3d 1178, 1181 (9th Cir. 1998) (citing *Pareto v. FDIC*, 139 F.3d 696, 699 (9th Cir.

22   1998)).  A complaint must state "evidentiary facts which, if true, will prove [the claim]," *Kendall

23   v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1047 (9th Cir. 2008), otherwise it will be dismissed.  *See Watson

24   v. Weeks*, 436 F.3d 1152, 1157 (9th Cir. 2006).

25          A challenge to a federal court's subject matter jurisdiction is properly raised under a motion

26   to dismiss pursuant to Rule 12(b)(1).  *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000).  "Article

27   III standing is a necessary component of subject matter jurisdiction."  *In re Palmdale Hills Prop.,

28   LLC*, 654 F.3d 868, 873 (9th Cir. 2011).  Standing requires that the plaintiff suffered an "injury in

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

6

DEFENDANT CLICKTALE, INC.'S MOTION TO DISMISS
PLAINTIFF'S SECOND AMENDED COMPLAINT
Case No. 3:20-cv-07575-LB

1    fact" that is "concrete and particularized." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992).  In

2    seeking to invoke a court's jurisdiction, plaintiffs bear the burden of proving that jurisdiction exists.

3    *Scott v. Breeland*, 792 F.2d 925, 927 (9th Cir. 1986).

4    **IV.    THE SAC FAILS TO STATE A CLAIM.**

5        **A.    Plaintiff Fails to State a Claim Under CIPA.**

6        As set forth below, Plaintiff fails to state a claim under either Sections 631 or 635 of CIPA

7    and lacks standing under Section 635.  Notably, to the extent there is any ambiguity in the

8    application of CIPA, that ambiguity should be construed in Clicktale's favor.  *See People v. Avery*,

9    27 Cal. 4th 49, 58 (2002) ("[A]mbiguous penal statutes are construed in favor of defendants . . . [if]

10   two reasonable interpretations of the same provision stand in relative equipoise."); *see also Warden

11   v. Kahn*, 99 Cal. App. 3d 805, 814, 818 n.3 (1979) (observing that as a penal statute, ambiguity in

12   Section 631 should be interpreted narrowly).

13           **1.    Clicktale is not Liable Under Section 631 Because it was a Party to the
                     Underlying Communication.**
14

15       Plaintiff alleges that Clicktale "embedded in the computer code on" Gap's websites that

16   "secretly observe and record website visitors' keystrokes, mouse clicks, and other electronic

17   communications" in contravention of Section 631.  (SAC ¶¶ 1, 72, 73.)  To state a claim under the

18   statute, Plaintiff must plead facts showing that Clicktale used a "machine, instrument, or

19   contrivance" to make an "unauthorized connection . . . with any telegraph or telephone wire, line,

20   cable, or instrument."  (*Id.* ¶ 69.)  *See also* Cal. Penal Code § 631(a).  The SAC fails to plead these

21   elements.

22       To start, Plaintiff's claims against Clicktale fail because it merely acted as a service provider

23   to Gap, and is thus exempt from Section 631 liability as a party to the communication.

24       As this Court has previously recognized, "[o]nly a third party can listen to a conversation

25   secretly. . . . By contrast, a party to a communication can record it (and it is not eavesdropping

26   when it does)." *Graham*, 2021 WL 1312765, at *4 (citation omitted).  This observation is consistent

27   with well-settled authority holding that Section 631 applies "only to eavesdropping by a third

28   party." *Membrila v. Receivables Performance Mgmt., LLC*, No. 09-cv-2790, 2010 WL 1407274,

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

7

DEFENDANT CLICKTALE, INC.'S MOTION TO DISMISS
PLAINTIFF'S SECOND AMENDED COMPLAINT
Case No. 3:20-cv-07575-LB

at *2 (S.D. Cal. Apr. 6, 2010) (citation omitted); *see also In re Google Inc. Cookie Placement Consumer Priv. Litig.*, 806 F.3d 125, 152 (3d Cir. 2015) (affirming the dismissal of Section 631 claims because "the pleadings demonstrate that Google was itself a party to all the electronic transmissions that are the bases of the plaintiffs' wiretapping claims [] [b]ecause § 631 is aimed only at 'eavesdropping, or the secret monitoring of conversations by third parties'"). As this Court noted in its dismissal of the FAC in *Graham* (and referenced as the basis for dismissing the FAC in this case), in *Rogers v. Ulrich*, the court affirmed an order dismissing Section 631 claims when the defendant allegedly recorded his telephone conversation with the plaintiff. 52 Cal. App. 3d 894, 899 (1975). In so holding, the *Rogers* Court explained that "[i]t is never a secret to one party to a conversation that the other party is listening to the conversation" and "'[e]avesdropping' is the problem the Legislature meant to deal with" in enacting CIPA, which "is defined in Webster's 7th New Collegiate Dictionary (1972) as 'to listen secretly to what is said in private.'" *Id.* *Rogers* unequivocally affirms that Section 631 only criminalizes eavesdropping by ***third parties***. *See id.* at 897-99. In *Rogers*, the defendant recorded his conversation with plaintiff using "a tape recorder jack [that] had been recently installed on [his] telephone by the telephone company." 52 Cal. App. 3d at 897. The plaintiff there did not assert that the telephone company wiretapped his communications based on its provision of tools to record the conversation. Like here, that assertion would be absurd.

This interpretation of CIPA mirrors the Federal Wiretap Act, which also exempts from liability parties to the communication. 18 U.S.C. § 2511(2)(c), (d). "Courts perform the same analysis for both the Wiretap Act and CIPA regarding the party exemption." *In re Facebook, Inc. Internet Tracking Litig.* (*Facebook*), 956 F.3d 589, 607 (2020); *see also Brodsky v. Apple Inc.*, 445 F. Supp. 3d 110, 127 (N.D. Cal. 2020) ("The analysis for a violation of CIPA is the same as that under the federal Wiretap Act.") (citation omitted).

Applying these principles here, Clicktale is a party to any communications it collected at Gap's behest between Plaintiff and the Old Navy website. This Court previously recognized that "for the reasons stated in *Graham*, Clicktale is not a third-party eavesdropper. It is a vendor that provides a software service that allows its clients to monitor their website traffic." (ECF No. 31 at

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

8

DEFENDANT CLICKTALE, INC.'S MOTION TO DISMISS
PLAINTIFF'S SECOND AMENDED COMPLAINT
Case No. 3:20-cv-07575-LB

5.)  In the referenced decision, the Court observed that "as a service provider, [the session replay provider] is an extension of [the website]," and "the allegations about [the session replay provider] are different than the acts that courts hold plausibly support a claim of surreptitious wiretapping by a third party." *Graham*, 2021 WL 1312765, at *5.  The same logic applies here, and none of Plaintiff's amendments remedy this threshold pleading defect.

The SAC still makes clear that Clicktale is a vendor that provides a software as a service. (SAC ¶ 6.)  And nothing in Plaintiff's pleadings rebuts this Court's finding that "Clicktale is Gap's vendor for software services." (*See* ECF No. 31 at 2); *supra* section II.

The thrust of Plaintiff's new allegations seek to create an inference that Clicktale is a non-party to any communications and is thus an unlawful third-party eavesdropper.  Plaintiff incorrectly asserts, for example, that Clicktale's actions were no different from the situation CIPA was enacted to stop:  "a person placing or receiving a call . . . where the person on the other end of the line permits an outsider to tap his telephone or listen in on the call."  (SAC ¶ 71 (citations omitted).)  But Plaintiff's attempt at artful pleading does not save her claims.

Given another chance to amend her complaint to allege that Clicktale is more than just a service provider, Plaintiff has made only a few substantive additions:  1) allegations regarding a miscellaneous Clicktale patent filing that is both untethered to the technology at issue in this case and in accord with what features a service provider might offer, 2) inapposite references to Clicktale's parent company Contentsquare's form master services agreement, and 3) a roundup of instances where Clicktale has argued it is a party to communications it collects on behalf of websites.  *Supra* section II; (SAC ¶¶ 35-40; 41; 48.).  None of these new allegations create a plausible inference that Clicktale's role exceeds that of a service provider—it collects and analyzes Gap's data, as directed by Gap, and for Gap's purposes.  And while Plaintiff has omitted her prior allegation that Clicktale's purpose is to "help businesses improve their website design and customer experience," nothing in the SAC leads to a different conclusion regarding Clicktale's limited role vis-à-vis  Gap.  (ECF No. 1 ¶ 15.)

***Clicktale Patent.***  Plaintiff selectively quotes an alleged Clicktale patent that she does not attach to her pleading, but Plaintiff's reliance on this document is flawed for multiple reasons.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

9

DEFENDANT CLICKTALE, INC.'S MOTION TO DISMISS
PLAINTIFF'S SECOND AMENDED COMPLAINT
Case No. 3:20-cv-07575-LB

*First*, as a matter of law, any purported statements in the patent filing cannot show what service Clicktale provided Gap because such filings speak generally to the state of the art (i.e., website analytics technology), not a specific Clicktale product.  *See In re Sony Grand Wega KDF-E A10/A20 Series Rear Projection HDTV Television Litig.*, 758 F. Supp. 2d 1077, 1090 (S.D. Cal. 2010) (giving no weight to patent filings, *inter alia*, because "Plaintiffs do not link any of the patent filings to the" relevant product or service).  Plaintiff does not claim that the patent was used in the session replay technology allegedly implemented by Gap, nor that it even relates to that technology. Plaintiff's own pleading highlights the flaw in this omission, acknowledging that session replay technology is just "[o]ne of Clicktale's features."  (SAC ¶ 13.)

*Second*, even assuming this patent was linked to the software actually deployed by Gap, the inferences Plaintiff seeks to draw regarding Clicktale's conduct are speculative at best.  Plaintiff contends, for example, based on this patent, that "*[i]f requested by the website owner*, Clicktale will make the session replay data available *to the subscriber* in some standard format, such as XML to share with other third parties," but she fails to claim that Clicktale did so for Gap (*Id.* ¶ 40 (internal quotation marks and citations omitted, and emphasis added).)  Plaintiff also claims that "Clicktale's server '*includes an interface*, adapted to receive compressed user activity information representative of activities performed by the user during a visit to a web page,'" but fails to allege that Clicktale utilized this interface with Gap.  (*Id.* ¶ 38 (citations omitted and emphasis added).) In fact, Plaintiff does not allege that Clicktale actually undertakes any of these hypothetical activities that she excerpts from the patent, let alone that it did so in connection with its partnership with Gap or with Plaintiff's particular data.

*Third*, even if these cherry-picked quotes were linked to Gap's use of Clicktale for the Old Navy website, they would be insufficient to allege that Clicktale is anything more than Gap's service provider.  At most, these allegations suggest that Clicktale can collect data about website visits for *its website customers*, compress that data so it is viewable by *its website customers*, provide an interface so *its website customers* can view that data, allow *its website customers* to identify common characteristics between website visits, and process that data to provide it to the website so that *the website* can possibly use it with third parties, only.  (*Id.* ¶¶ 35, 37-40.)  Yet all

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

10

DEFENDANT CLICKTALE, INC.'S MOTION TO DISMISS
PLAINTIFF'S SECOND AMENDED COMPLAINT
Case No. 3:20-cv-07575-LB

these activities (which, again, are not alleged to be utilized by Gap) are tools used as directed by the website operator, at the website operator's discretion—and thus fit squarely within a service provider's role.

Next, and contrary to Plaintiff's claims, nothing in this patent or that Plaintiff cites alleges that Clicktale deanonymizes website visitors, creates profiles about website visitors, or does anything other than organize Clicktale's data. (*Id.* ¶¶ 42.) Plaintiff claims that "Clicktale's software . . . . not only has access to interactions between consumers and websites . . . but it also allows that information to be provided to other third parties, and make use of other third-party technologies to identify users." (*Id.*) Yet the only support she provides for this claim is the miscellaneous Clicktale patent, which describes an option for the website owner to receive *its own data* from Clicktale in an easily readable format "[i]f requested by the website owner." (*Id.* ¶ 40.) This is a far cry from *Clicktale* deanonymizing, scanning computers, or otherwise building user profiles, as was the case in other instances where the courts have found Section 631 claims to be plausibly alleged. *See infra* section IV(A)(1). What Gap *may* do with data it has collected about users from other sources (if it even collects this additional data) and whether it combines that with data collected by Clicktale and other sources to identify users, is both not alleged and immaterial to Clicktale's liability for wiretapping. Tellingly, Plaintiff does not allege that *Clicktale or Gap* ever assembled or used her information for marketing or ad targeting purposes, or that her information was ever sold or shared other than between a website and its service provider.

In sum, for all the reasons set forth above, even assuming this patent was linked to Clicktale's use of session replay software, the "technical context" Plaintiff describes does not create a plausible inference that Clicktale acted as a third-party eavesdropper. *See Facebook*, 956 F.3d at 607 (holding that the "technical context" is paramount in determining whether a listener is eavesdropping or a party exempt from CIPA liability). At bottom, this patent describes a service provider's tools for website operators to improve site functionality.

***Contentsquare Master Services Agreement.*** Plaintiff quotes Contentsquare's master services agreement as supposed support for her allegation that "Clicktale uses the session replay

1    data for its own benefit."[7]  (SAC ¶ 41.)  This reliance is replete with problems.  First, once again,

2    Plaintiff does not link that agreement to this case because she fails to allege that Gap agreed to these

3    terms with Clicktale for the Old Navy website, or even that Clicktale ever used Contentsquare's

4    master service agreement.   Second, Plaintiff also selectively quotes that agreement, which

5    elsewhere states that "[i]n no event shall Contentsquare sell or transfer Customer Data to third

6    parties for marketing or advertising purposes."  *Id.*  Third, even assuming Clicktale had access to

7    the communications it collected on Gap's behalf, Plaintiff never alleges that Clicktale actually

8    accessed, used, or disclosed *any* communications, much less Plaintiff's communications.  Finally,

9    mere access to those underlying communications does not somehow transform Clicktale into a third

10   party wiretapper.

11           ***Clicktale's Role as a Party to the Communication.***  Plaintiff further claims Clicktale is

12   necessarily a non-party to the communication because it has referred to itself as "a party" to

13   communications with its website customers in prior filings in this case.  (*Id.* ¶ 48.)  This is simply

14   a different way of stating that Clicktale steps into the shoes of its website provider customers (such

15   as Gap), and therefore falls within the party exemption.  These out-of-context quotes are hardly

16   well-pled factual allegations that Clicktale is "not a simple tape recorder or screen recording

17   software," and Plaintiff's reliance on them does not save her claims.  (*Id.* ¶42.)

18           Finally, although the Courts in *Facebook* and *Revitch* sustained CIPA claims at the

19   dismissal stage, they did so based on starkly different facts, ones that only underscore Plaintiff's

20   pleading deficiencies here.  In *Facebook*, plaintiffs alleged that the defendant was compiling a

21   cradle-to-grave profile of logged out users' browsing history *for its own purpose* and without users'

22   consent.  *Facebook*, 956 F.3d at 607.    While in *Revitch*, NaviStone captured the data,

23   de-anonymized it, and matched it with other databases, thereby creating its own marketing

24   databases of identified website visitors.  (Second Am. Compl. at 2 (¶ 1), 4–17 (¶¶ 9-46), *Revitch v.*

25   *New Moosejaw, LLC*, No. 3:18-cv-06827, (N.D. Cal. May 22, 2019), ECF No. 43.)  As this Court

26   recognized in *Graham*, plaintiffs in *Revitch* claimed that NaviStone acted independently, including:

27   _____

28   [7] *See* Content Square Master Service Agreement, Contentsquare (July 2020),
     https://contentsquare.com/legal/terms-conditions/terms-conditions-archive/content-square-master-service-agreement-v2020-2/ ("Contentsquare master services agreement").

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

12

DEFENDANT CLICKTALE, INC.'S MOTION TO DISMISS
PLAINTIFF'S SECOND AMENDED COMPLAINT
Case No. 3:20-cv-07575-LB

"coordinat[ing] with additional entities," "attempts to 'match' elements of the intercepted data with records of real-life people [NaviStone] maintained in the back-end databases," "combining and correlating its data, [so that] NaviStone can watch consumers as they browse hundreds of participating e-commerce sites, in real-time," "obfuscat[ing] the wiretap codes through dummy domains to attempt to conceal its activities," and independently "send[ing] postcards to the homes of anonymous website shoppers within a day or two of their visit," matching anonymous site traffic to names and addresses, among other things.  (*Id.* ¶¶ 18, 19, 21, 22.)  No such facts are pled here.[8]

Clicktale is not a data broker, like the defendant in *Revitch*, nor is it an advertising platform, like the defendant in *Facebook*.  Those defendants "were independent parties who mined information from other websites and sold it" and Plaintiff's hodgepodge of new allegations regarding Clicktale's technology do not compel a contrary conclusion.  *Compare supra*, section II *with Graham*, 2021 WL 1312765, at *5.  At most, Plaintiff alleges that some unspecified Clicktale technology that may or may not have been implemented by Gap on the Old Navy Website may have allowed Clicktale to review and parse data it collected as a service provider in the context of providing that service.  These speculative allegations are a far cry from those at issue in *Revitch* and *Facebook.  See supra* section II.

Given that there is no equivalent of a wiretap here, Clicktale is not a third-party eavesdropper, its Event Triggered Recorder technology is not a wiretap, and Plaintiff's Section 631 claims should be dismissed, this time with prejudice.

---

[8] Just today, a Florida court dismissed allegations similar to those brought here under the FSCA, Florida's wiretapping statute.  That court held that "Congress did not intend for the Federal Wiretap Act to extend to the use of commonplace analytics software to improve a website browsers' experience and the FSCA, being modeled after the Federal Wiretap Act, likewise does not extend to the use of commonplace analytics software to improve a website browsers' experience."  Order Granting Mot. to Dismiss, *Jacome v. Spirit Airlines Inc.*, No. 2021-000947-CA-01 at *5 (Fla. Miami-Dade Cnty. Ct. June 17, 2021) (Ex. D).  Like the FSCA, CIPA and the federal Wiretap Act are so similar that "[t]he analysis for a violation of CIPA is the same as that under the federal Wiretap Act."  *McCoy v. Alphabet, Inc.*, No. 20-CV-05427-SVK, 2021 WL 405816, at *13 (N.D. Cal. Feb. 2, 2021) (citation omitted).  The court in *Jacome* went on to distinguish *Revitch*, endorsing instead this Court's reasoning in *Yale, Graham*, and *Blue Nile, Inc.* as to what constitutes 'content' under various wiretapping statutes.  Order Granting Mot. to Dismiss, *Jacome v. Spirit Airlines Inc.*, No. 2021-000947-CA-01 at n. 5 (Fla. Miami-Dade Cnty. Ct. June 17, 2021).  The court also embraced the same argument that Contentsquare advances here, that "[e]ven if the Court found there was an ambiguity as to the FSCA's scope, the rule of lenity demands that the Court interpret the FSCA in favor of Spirit. *United States v. Santos*, 553 U.S. 507, 514 (2008)." *Id.* at 6.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

13

DEFENDANT CLICKTALE, INC.'S MOTION TO DISMISS
PLAINTIFF'S SECOND AMENDED COMPLAINT
Case No. 3:20-cv-07575-LB

1

**2.    Plaintiff also Fails to Plead that the Content of her Communications was Intercepted.**

2

3    Plaintiff alleges that the "actionable 'content' . . . falls under two categories" which include

4    "webpages and URLs that Plaintiff viewed while on the website" and "Plaintiff's keystrokes, mouse

5    clicks, form field entries, and any other information Plaintiffs [sic] intentionally provided to The

6    Gap while on the website."  (SAC ¶ 74.)  Despite this Court's directive that Plaintiff "delineate

7    content from non-content records," Plaintiff misapplies and ignores precedent that defines content

8    and does not plead what, if any, of her content was intercepted.  (ECF No. 31 at 5-6.)

9    *First*, neither "webpages and URLs" nor "keystrokes" or "mouse clicks" are actionable

10    content under CIPA.  (SAC ¶¶ 50, 74.)  *See In re Zynga Priv. Litig.*, 750 F.3d 1098, 1107 (9th Cir.

11    2014) (reasoning that "divulge[ing] identification and address information contained in a referer

12    header," as well as "record information" are not the contents of a communications under the

13    Wiretap Act); (*see also* ECF No. 31 at 5-6.)

14    *Second*, even after two opportunities to amend, Plaintiff remains unable to identify what, if

15    any, specific information she input on Gap's website, merely alleging that she "viewed and used

16    the website, and did the kinds of things people typically do when visiting a website."  (SAC ¶ 4.)

17    Plaintiff thus fails to plausibly allege that she provided Gap any actionable content, and that even

18    if she did, that Clicktale collected that content.  *See* Order Dismissing First Am. Compl. with Leave

19    to Amend at 1, *Revitch v. New Moosejaw, LLC*, No. 3:18-cv-06827 (N.D. Cal. May 1, 2019), ECF

20    No. 40 (dismissing similar claims for lack for Article III standing because "[w]ithout any

21    allegations about the content of the communications Revitch had with New Moosejaw or

22    NaviStone, or about the files accessed from his computer, Revitch has not identified a concrete and

23    particularized harm").

24    As set forth above, this Court should dismiss with prejudice Plaintiff's Section 631 claims

25    for failing to sufficiently plead that Clicktale intercepted the content of her communications.

26    **3.    Plaintiff Fails to Allege Sufficient Facts to Support a Section 635 Claim.**

27    Plaintiff wrongly claims that Clicktale "intentionally manufactured, assembled, sold,

28    offered for sale, advertised for sale, transported, imported, and/or furnished a wiretap device that is

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

14

DEFENDANT CLICKTALE, INC.'S MOTION TO DISMISS
PLAINTIFF'S SECOND AMENDED COMPLAINT
Case No. 3:20-cv-07575-LB

primarily or exclusively designed or intended for eavesdropping upon the communication of another." (SAC ¶ 84.)  This claim should also be dismissed with prejudice, regardless of whether Plaintiff's Section 631 claims are sustained.[9]

> a.   **Plaintiff lacks constitutional or statutory standing to bring a Section 635 claim against Clicktale.**

To start, Plaintiff lacks both constitutional and statutory standing to pursue a Section 635 claim because CIPA's private right of action cannot be extended to permit suits where, as here, no "person [] has been injured by a violation of this chapter . . . ."  Cal. Penal Code § 637.2(a). Likewise, to satisfy Article III standing, a plaintiff must allege "injury in fact," *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016).  To meet this standard, a plaintiff "must show that . . . she suffered an invasion of a legally protected interest that is concrete and particularized" from the alleged violation, and that the defendant's actions "affect[ed] the plaintiff in a personal and individual way." *Id.* at 1548 (citation omitted)*.*

Here, Plaintiff does not meet either standard because she only alleges that Clicktale possessed, manufactured, and sold said device, coupled with unsupported allegations that a range of data *could* be collected by Clicktale's code. Plaintiff makes no allegation of injury from the purported violation of Section 635, and the manufacture, possession or sale of a device are not connected to any injury, real or imagined, and so cannot meet the *Spokeo* standard.

In *Cohen*, for example, the court held that it would be "constitutionally problematic" to accord a private right of action for possession of a wiretap device such that "plaintiffs who suffered no injury in fact would still be able to sue." *Cohen v. Casper Sleep, Inc.*, Nos. 17cv9325, 17cv9389, 17cv9391, 2018 WL 3392877, at *5 (S.D.N.Y. July 12, 2018) (citation omitted).  The same reasoning holds here. *See NovelPoster v. Javitch Canfield Grp.*, 140 F. Supp. 3d 938, 954 (N.D.

---

[9] Plaintiff's Section 631 and 635 claims do not necessarily rise and fall together.  To read otherwise would "confuse[] ... alleged violations of § 2512 with violations of § 2511." *Allen v. Quicken Loans Inc.*, No. 17-12352, 2018 WL 5874088, at *9 (D.N.J. Nov. 9, 2018) (citing *Luis v. Zang*, 833 F.3d 619, 644 (6th Cir. 2016) (Batchelder, J. dissenting)).  Such an interpretation would also render Section 635 redundant with Sections 631 and 632, given that, in order to allegedly eavesdrop or wiretap (and thus violate Sections 631 or 632), one must possess the alleged eavesdropping/wiretapping device (violating Section 635).  This is in accord with the "cardinal rule of statutory interpretation that no provision should be construed to be entirely redundant." *Republic of Ecuador v. Mackay*, 742 F.3d 860, 864 (9th Cir. 2014) (citation omitted).

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

15

DEFENDANT CLICKTALE, INC.'S MOTION TO DISMISS
PLAINTIFF'S SECOND AMENDED COMPLAINT
Case No. 3:20-cv-07575-LB

1   Cal. 2014) ("The analysis for a violation of CIPA is the same as that under the federal Wiretap

2   Act."). Allowing suit for mere manufacture, possession, or sale of an alleged eavesdropping device,

3   without any allegation of injury, would obviate the need for Article III standing and raise serious

4   constitutional concerns.

5        The court in *Revitch* incorrectly reached a different conclusion, holding that the plaintiff

6   had sufficiently pled injury by simply parroting the statutory requirements and "alleg[ing] injuries

7   traceable to Moosejaw's possession and use of the device." *Revitch*, 2019 WL 5485330, at *3. The

8   court's decision in *Revitch* is contrary to the plain language of the statute as well as the decisions

9   of many other courts that have made clear that CIPA's federal analogue, the Wiretap Act, does not

10  provide a private right of action for the manufacture, possession, and/or sale of wiretap devices.

11  *See In re Lenovo Adware Litig.*, No. 15-md-02624, 2016 WL 6277245, at *7 (N.D. Cal. Oct. 27,

12  2016) ("Section 2512 [federal Section 635 analogue] however, does not establish a private right of

13  action–it addresses only criminal liability."); *see also DirecTV, Inc. v. Treworgy*, 373 F.3d 1124,

14  1129 (11th Cir. 2004) (concluding that "the language of section 2520(a) does not create a private

15  right of action against a person who possesses a device in violation of section 2512(1)(b)").

16       Regardless, the facts as pled here are substantially different from those in *Revitch*. The

17  plaintiffs in *Revitch* alleged that, among other things, NaviStone "scanned [plaintiff's] computer

18  for files that revealed his identity and browsing habits." *Revitch*, 2019 WL 5485330, at *3. By

19  contrast, Plaintiff here only contends that Gap employed a service provider to collect information

20  from its own website (SAC ¶ 4); she had a "reasonable expectation that [her] PII and other data

21  would remain confidential," (*id.* ¶ 94); and that "session recording technologies such as Clicktale's

22  ***can leave*** users vulnerable to data leaks and the harm resulting therefrom." (*Id.* ¶ 26 (emphasis

23  added).) Plaintiff does ***not*** plead that Clicktale accessed her information for an improper purpose;

24  disclosed her information to any third party; or otherwise caused her any harm whatsoever. *See*

25  *supra* section II. These facts render *Revitch* inapposite and are insufficient to demonstrate the

26  required concrete injury. *Cf. Cahen v. Toyota Motor Corp.*, 717 F. App'x 720, 724 (9th Cir. 2017)

27  (holding that claims of unauthorized data sharing of non-individually identifiable driving history

28  did not meet Article III standing requirements).

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

16

DEFENDANT CLICKTALE, INC.'S MOTION TO DISMISS
PLAINTIFF'S SECOND AMENDED COMPLAINT
Case No. 3:20-cv-07575-LB

1    Accordingly, this Court should dismiss Plaintiff's Section 635 claim with prejudice.

2          **b.      Clicktale's Event Triggered Recorder technology is not a device
3                   "primarily or exclusively designed" for eavesdropping.**

4          Plaintiff's Section 635 claim fails for another reason as well.  Aside from her bare recital of

5    the statute's requirements, Plaintiff fails to allege sufficient facts to show the alleged "code"

6    installed on Gap's website is a device "primarily or exclusively designed" for eavesdropping.

7    Indeed, her pleadings support the proposition that Clicktale's technology is designed to *not*

8    eavesdrop on any alleged communications such as name, address, and payment card information.

9    *See supra* section IV(A)(2).  In the absence of a statutory definition, courts "look to the plain

10   meaning" of the disputed terms.  *Friends of Yosemite Valley v. Norton*, 348 F.3d 789, 796 (9th Cir.

11   2003).  Merriam-Webster defines eavesdropping as "the act of secretly listening to something

12   private," an allegation conspicuously missing from Plaintiff's SAC.  *Eavesdropping*, Merriam-

13   Webster,  https://www.merriam-webster.com/dictionary/eavesdropping;  (SAC  ¶¶  83-85).   As

14   Plaintiff notes, the code instead simply collects data willingly typed onto the Old Navy website,

15   much  the  same  as  "content  from  third-party  servers"  is  collected  through  "analytics  tools,

16   advertising  networks,  code  libraries  and  other  utilities,"  which  are  "part  of  routine  internet

17   functionality." *In re Facebook Internet Tracking Litig.*, 263 F. Supp. 3d 836, 846 (N.D. Cal. 2017)

18   (overturned on other grounds); *cf. Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010, 1025 (N.D. Cal.

19   2012) (finding that LinkedIn did not commit a "highly offensive" invasion of users' privacy by

20   disclosing users' browsing histories to third parties); *In re Google, Inc. Priv. Pol'y Litig.*, 58 F.

21   Supp. 3d 968, 988 (N.D. Cal. 2014) (finding that Google's collection and disclosure of users' data,

22   including their browsing histories, "do not plausibly rise to the level of intrusion necessary to

23   establish an intrusion claim").

24         While Plaintiff asserts that Clicktale's "code" is designed to collect non-confidential

25   keystroke information, she does not explain why that function makes it a device "primarily or

26   exclusively designed" for *eavesdropping*.  (SAC ¶¶ 84-85.)  Indeed, this code allegedly behaves

27   and is used in a manner identical to any technology designed to facilitate web-browsing activity,

28   including cookie technology, which can be used for a variety of purposes.  *Cf.*, *In re DoubleClick,*

*Inc. Priv. Litig.*, 154 F. Supp. 2d 497, 502-03 (S.D.N.Y. 2001) (explaining how cookies are computer programs commonly used by websites to store useful information that help with website operation, just as session replay tools employ computer programs do as well).

Plaintiff attempts to paint Clicktale's technology as more harmful than "run-of-the-mill" website analytics such as "cookies" by alleging that cookies are not individualized.  (SAC ¶ 23.) Not so.  As explained in *In re DoubleClick*, cookies are stored locally on website visitor machines and can be used to create comprehensive, *individualized and identifiable,* profiles about website visitors—something Plaintiff does not allege Clicktale achieves with session replay technology. The fact that Clicktale may collect or present this data differently than other tools, as Plaintiff alleges, does not render it more intrusive than what is collected by many cookies.  (SAC ¶¶ 23, 59.)

In short, Plaintiff fails to allege how this code was deployed to purportedly intercept her electronic communications, or how this code is exclusively used for eavesdropping and therefore could be considered a device within the meaning of the statute.  Plaintiff thus fails to state a claim under Section 635 and this cause of action should be dismissed with prejudice.

## B.   Plaintiff Fails to Allege an Invasion of Privacy Under the California Constitution.

Plaintiff also does not state a claim under the California Constitution for multiple reasons. As this Court recognized in dismissing the First Amended Complaint, Plaintiff's California Constitution claims cannot survive because she fails to state a claim under CIPA.  (ECF No. 31 at 6; *see also Graham,* 2021 WL 1312765, at *8.)  Moreover, regardless of whether the Court sustains Plaintiff's CIPA claims, her invasion of privacy claim must be dismissed because Plaintiff's amended allegations do not meet the "high bar for an invasion of privacy claim."  *Belluomini v. Citigroup, Inc.*, No. CV 13-01743, 2013 WL 3855589, at *6 (N.D. Cal. July 24, 2013); *Hernandez v. Hillsides, Inc.*, 47 Cal. 4th 272, 287 (2009) (describing the necessary violation for a California Constitutional invasion of privacy claim as one "so serious in nature, scope, and actual or potential impact as to constitute an egregious breach of the social norms.") (internal quotation marks and citation omitted).

To plead a claim for invasion of privacy under the California Constitution, Plaintiff must

Cooley LLP
Attorneys at Law
San Francisco

18

Defendant Clicktale, Inc.'s Motion to Dismiss
Plaintiff's Second Amended Complaint
Case No. 3:20-cv-07575-LB

1    allege: "(1) a legally protected privacy interest; (2) a reasonable expectation of privacy under the

2    circumstances; and (3) conduct by the defendant that amounts to a serious invasion of a protected

3    privacy interest." *Moreno v. S.F. Bay Area Rapid Transit Dist.*, No. 17-cv-02911, 2017 WL

4    6387764, at *7 (N.D. Cal. Dec. 14, 2017).

5         The SAC falls far short of these standards because it does not allege how Plaintiff's

6    browsing conduct on the Old Navy website—a place to buy flip flops and t-shirts—is "*sensitive*

7    and *confidential*," nor does Plaintiff explain how she had a reasonable expectation of privacy *from*

8    *Gap's service providers* as to information she voluntarily input on the Old Navy website. *See, e.g.*,

9    *In re Yahoo Mail Litig.* (*Yahoo*), 7 F. Supp. 3d 1016, 1040 (N.D. Cal. 2014) (internal quotation and

10   citation omitted) (finding that there is no legally protected privacy interest in the contents of emails

11   generally, only in content that is sensitive and confidential).  In fact, Plaintiff's SAC still fails to

12   allege facts establishing *any* of these elements, much less all three, and therefore the Court should

13   dismiss this claim with prejudice.

14              **1.    Plaintiff Fails to Allege a Legally Protected Privacy Interest.**

15        To withstand dismissal of an invasion of privacy claim, Plaintiff must allege a legally

16   protected privacy interest.  *Hill v. Nat'l Collegiate Athletic Ass'n*, 7 Cal. 4th 1, 35 (1994).  "Just as

17   the right to privacy is not absolute, privacy interests do not encompass all conceivable assertions

18   of individual rights."  *Id.*  Legally recognized privacy interests are generally categorized in "two

19   classes: (1) interests in precluding the dissemination or misuse of *sensitive and confidential*

20   *information* ('informational privacy'); and (2) interests in making intimate personal decisions or

21   conducting personal activities without intrusion ('autonomy privacy')."  *Id.*  (emphasis added).

22        Plaintiff parrots these legal requirements and generally alleges that she has an interest in

23   "precluding the dissemination and/or misuse" of her information, and in making personal decisions

24   and/or conducting personal activities without observation.  (SAC ¶ 92.)  Yet she fails to plead facts

25   to establish a legally protected informational privacy *or* autonomy privacy interest.

26        Autonomy privacy is akin to bodily autonomy (such as a right to obtain an abortion or to

27   not provide urine for a drug test) and courts have not found "cause to extend the bodily autonomy

28   line of cases to data autonomy."  *In re Google Location Hist. Litig.*, 428 F. Supp. 3d 185, 198 (N.D.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

19

DEFENDANT CLICKTALE, INC.'S MOTION TO DISMISS
PLAINTIFF'S SECOND AMENDED COMPLAINT
Case No. 3:20-cv-07575-LB

Cal. 2019); *Yahoo*, 7 F. Supp. 3d at 1039 ("California courts have discussed autonomy privacy in the context of cases alleging *bodily* autonomy."). The information potentially at issue here—i.e., online clothing shopping activity that Plaintiff does not even allege is linked to her identity—has nowhere near the same privacy interest recognized in cases involving bodily autonomy, and Plaintiff has thus not pled a legally protected privacy interest on this theory. *Contra Smith v. Fresno Irrigation Dist.*, 72 Cal. App. 4th 147, 161 (1999) (discussing autonomy privacy in the context of drug testing through use of a urine sample). Even assuming Clicktale collected payment card information, innumerable internet transactions are processed by third party payment processors daily. This processing is done at the behest of websites and often without any website participation. Plaintiff's claims would make many of these payment processors violators of the California Constitution.

Plaintiff also fails to plead an informational privacy interest for multiple reasons. *First*, most personally identifying information is not subject to constitutional protection. "The disclosure of mere contact information, such as names and addresses, does not unduly interfere with one's right to privacy." *Cabral v. Supple, LLC*, No. EDCV 12-85, 2012 WL 12895825, *3 (C.D. Cal. Oct. 3, 2012). Indeed, even in the context of private *medical* information, courts have held that "[p]laintiff and the [c]lass have no legally protected privacy interest in de-identified information." *London v. New Albertson's, Inc.*, No. 08-CV-1173, 2008 WL 4492642, at *8 (S.D. Cal. Sept. 30, 2008) (dismissing invasion of privacy claim). Similarly, Gap has not disavowed promises regarding the treatment of the data website users provide it. *Contra In re Vizio, Inc., Consumer Priv. Litig.*, 238 F. Supp. 3d 1204, 1233 (C.D. Cal. 2017) (finding that when courts "extend the tort of invasion of privacy to the routine collection of personally identifiable information" it involves surreptitious collection or "disregard[ing] consumers' privacy choices"). Plaintiff does not allege what specific information she disclosed to Clicktale, the panoply of information she alleges a website visitor *might* provide to Gap does not meet this bar, and her conclusory claim that any information Clicktale may have collected about her was sensitive does not make it so. *See supra* section II.

*Second*, courts reject the application of information privacy claims where—as here—the

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

20

DEFENDANT CLICKTALE, INC.'S MOTION TO DISMISS
PLAINTIFF'S SECOND AMENDED COMPLAINT
Case No. 3:20-cv-07575-LB

1  defendant "only tracked and collected data during use of [defendant's] services." *In re Google*

2  *Location Hist. Litig.*, 428 F. Supp. 3d at 198.

3      *Third*, Plaintiff does not plead, as she must, that the information she provided to Gap was

4  "disseminat[ed]" or "misuse[d]" in any fashion. *Hill*, 7 Cal. 4th at 35; *see also Alch v. Superior*

5  *Ct.*, 165 Cal. App. 4th 1412, 1423 (2008) ("Informational privacy . . . is the interest 'in precluding

6  the dissemination or misuse of sensitive and confidential information.'") (citation omitted). While

7  Plaintiff may claim that she has properly pled "dissemination" because the data collected on Gap's

8  behalf was allegedly available to Clicktale, nowhere does she allege that any data was disseminated

9  beyond Gap's service provider or that Clicktale did or could even potentially misuse any

10  information that was purportedly collected. Nor does she allege that the information she provided

11  was linked to her identity. Plaintiff only alleges the information was shared with Clicktale as Gap's

12  service provider to be used only for Gap's purposes. (SAC ¶¶ 12, 13.) These allegations plainly

13  do not satisfy the "dissemination" or "misuse" requirement.

14            **2.        Plaintiff Fails to Allege a Reasonable Expectation of Privacy.**

15      Plaintiff's privacy claim also fails because she does not plead that she had a reasonable

16  expectation of privacy. "A 'reasonable' expectation of privacy is an objective entitlement founded

17  on broadly based and widely accepted community norms." *Hill*, 7 Cal. 4th at 37 (citation omitted).

18  In determining whether an "objective entitlement" is present, "customs, practices, and [the]

19  physical settings surrounding particular activities" are taken into consideration, as are "*advance*

20  *notice*" and "the presence or absence of opportunities to *consent voluntarily* to activities impacting

21  privacy interests." *Id.* at 36-37 (emphasis added). Further, "[t]he plaintiff in an invasion of privacy

22  action must have conducted himself or herself in a manner consistent with an actual expectation of

23  privacy, i.e., he or she must not have manifested by his or her conduct a voluntary consent to the

24  invasive actions of defendant." *Yahoo*, 7 F. Supp. 3d at 1037-38 (internal citations omitted).

25      While Plaintiff generically contends that she "had a reasonable expectation that her PII,

26  PHI, and other data would remain confidential," Plaintiff cannot credibly claim she expected that

27  any of her communications with Gap's website should be hidden from Gap's own service providers,

28  such as Clicktale. (SAC ¶ 94.) Far from being hidden, her interactions with the Old Navy website

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

21

DEFENDANT CLICKTALE, INC.'S MOTION TO DISMISS
PLAINTIFF'S SECOND AMENDED COMPLAINT
Case No. 3:20-cv-07575-LB

were themselves intentional communications with Gap's servers.  *See Cohen*, 2018 WL 3392877, at *3 (analyzing similar claims and finding "[i]t is clear that the Retailers were parties to the communications . . . .").

Further, Plaintiff fails to allege any facts supporting her contention that such an expectation was ***reasonable***.  Plaintiff has not alleged, for example, that Gap expressly informed users that her communications would remain private.  Nor could she:  Gap explicitly discloses to Plaintiff in its privacy policy that data regarding her interactions with the website may be collected and that Gap "may share your personal information with . . . third parties as needed to carry out our business. . . ."  (*See* Gap Privacy Policy.)

Moreover, virtually all consumer-facing websites track the conduct of web visitors for myriad reasons, including enhancing the browsing experience and site functionality.  This tracking is accomplished by a similar myriad of third-party service providers.  Any web user who has enabled Ghostery or similar browser plug-ins to track the third party tools used by the websites they visit can attest that this is true.[10]   Given the near-universal practice of consumer-facing websites, no user can reasonably expect that the web pages she visits, or the information she provides to the operator of such a website, are hidden from that operator or its service providers.

### 3.   Plaintiff Fails to Allege Clicktale's Conduct Was a Serious Invasion of Privacy.

Even if Plaintiff had a legally protectable and objectively reasonable expectation that no party could view her activity on Gap's website, Clicktale's alleged monitoring would still not be highly offensive or meet the "high bar" for a common law invasion of privacy claim.  *See Low*, 900 F. Supp. 2d at 1025 (noting the high bar for such claims).  To be a serious invasion of privacy requires the alleged conduct to be an egregious violation of social norms.  *Yahoo*, 7 F. Supp. 3d at 1042.  Notably, courts have held that even the collection and subsequent dissemination of user data for marketing purposes is not a serious invasion of privacy.  *See In re Google, Inc. Priv. Pol'y Litig.*, 58 F. Supp. 3d at 987-88 (rejecting an invasion of privacy claim for collecting location information from users, associating it with other private user information, and then disclosing the

---

[10] Ghostery and similar tools enable their users to detect and control tags, trackers, and beacons—including session replay scripts—embedded in web pages.  *See* https://www.ghostery.com/.

Cooley LLP
Attorneys at Law
San Francisco

22

Defendant Clicktale, Inc.'s Motion to Dismiss
Plaintiff's Second Amended Complaint
Case No. 3:20-cv-07575-LB

1    commingled data to "third-party developers" in ways that allegedly violate the defendant's own

2    policies).  It cannot be, then, that the routine analysis of web activity for purposes of analyzing

3    website design and customer experience passes this high bar.

4         The California Court of Appeals' decision in *Folgelstrom v. Lamps Plus, Inc.* is instructive.

5    There, plaintiff asserted claims based on the collection of personally identifiable information that

6    was shared with third-party marketing firms.  195 Cal. App. 4th 986, 992 (2011).  The court found

7    "obtaining plaintiff's [information] without his knowledge or permission, and using it [for marketing

8    purposes] . . . . is not an egregious breach of social norms, but routine commercial behavior."  *Id*.

9    The equally routine and much less invasive practice of a website using its own customer

10   information to enhance its functionality—and employing third-party companies to act as a proxy in

11   said efforts—cannot therefore be an egregious violation of social norms that is highly offensive.

12   Indeed, Clicktale's use of a third-party service provider to collect this information in an anonymized

13   or pseudonymized manner is arguably *more* privacy protective, as it limits the ability of Gap or its

14   other third-party vendor to deanonymize or create individual profiles from this data directly.

15        The court's reasoning in *Folgelstrom* is consistent with a large body of case law in this

16   district that finds even the allegedly surreptitious collection and dissemination of personally

17   identifiably information, such as unique device identifiers, browsing activity, and address

18   information, for commercial purposes, is not enough to meet the exacting "highly offensive"

19   standard.  *See, e.g.*, *In re iPhone Application Litig.*, 844 F. Supp. 2d 1040, 1063 (N.D. Cal. 2012)

20   (dismissing with allegations that defendants disclosed to third parties "the unique device identifier

21   number, personal data, and geolocation information from Plaintiffs' iDevices"); *Yunker v. Pandora*

22   *Media, Inc.*, No. 11-CV-03113, 2013 WL 1282980, at *14-15 (N.D. Cal. Mar. 26, 2013) (same

23   with allegations of "obtain[ing] [plaintiff's] PII and provided that information to advertising

24   libraries for marketing purposes, in violation of the terms of Pandora's Privacy Policy"); *In re*

25   *Google Android Consumer Priv. Litig.*, No. 11-MD-02264, 2013 WL 1283236, at *2, *9-11 (N.D.

26   Cal. Mar. 26, 2013) (same with allegations of tracking and sharing of "highly detailed and

27   confidential [PII] over a substantial period of time without [Plaintiffs'] knowledge or consent").

28   Indeed, even negligent conduct that leads to theft of highly personal information, such as social

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

23

DEFENDANT CLICKTALE, INC.'S MOTION TO DISMISS
PLAINTIFF'S SECOND AMENDED COMPLAINT
Case No. 3:20-cv-07575-LB

1   security numbers, does not "approach [the] standard" of actionable conduct under the California

2   Constitution and thus does not constitute a violation of Plaintiff's right to privacy.  *See Ruiz v. Gap,*

3   *Inc.*, 540 F. Supp. 2d 1121, 1127-28 (N.D. Cal. 2008), *aff'd*, 380 F. App'x 689 (9th Cir. 2010).

4        Plaintiff may point to two cases, *Facebook* and *Revitch*, to avoid dismissal, but neither is

5   availing.  In *Facebook*, the court held that plaintiffs plausibly alleged an invasion of privacy based

6   on allegations that defendant created a comprehensive "cradle-to-grave profile" that "constantly

7   compiled and updated its database with the users' browsing activities" on third party websites for

8   logged-out Facebook users.  *Facebook*, 956 F.3d at 598-99.  According to that court, plaintiffs

9   identified sufficient facts to survive a motion to dismiss based on "surreptitious data collection

10  *when individuals were not using Facebook*" and their allegations that "internal Facebook

11  communications reveal that the company's own officials recognized these practices as a

12  problematic privacy issue."  *Id.* at 606 (emphasis added).  No such allegations are pled here, and

13  any effort to contort that case to fit the facts alleged in the SAC—i.e., electronic communications

14  directly between an online shopping website owner and its own visitors whose collection and

15  analysis is facilitated by a service provider—would be contrary to well-settled authority cited

16  above.

17       Meanwhile in *Revitch*, the court relied on allegations that the code in question "scanned

18  [plaintiff's] computer for files that revealed his identity and browsing habits."  *Revitch*, 2019 WL

19  5485330, at *3.  Those facts are not pled in this case.  As explained above, the routine collection

20  of information provided to a first party website and its vendor cannot possibly satisfy the strict

21  standard for invasion of privacy claims under the California Constitution.  Accordingly, neither

22  *Facebook* nor *Revitch* saves Plaintiff's invasion of privacy claims, and they too must be dismissed.

23  **V.     CONCLUSION.**

24       For the reasons above, this Court should grant the Motion and dismiss the case against

25  Clicktale in its entirety, with prejudice.  *See Eminence Cap., LLC v. Aspeon, Inc.*, 316 F.3d 1048,

26  1052 (9th Cir. 2003).

27

28

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1    Dated:  June 17, 2021                              COOLEY LLP

2                                                       By: */s/ Michael G. Rhodes*
                                                            Michael G. Rhodes
3
                                                        Attorneys for Defendant
4                                                       Clicktale, Inc.

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28      251401717

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

25

DEFENDANT CLICKTALE, INC.'S MOTION TO DISMISS
PLAINTIFF'S SECOND AMENDED COMPLAINT
Case No. 3:20-cv-07575-LB